Town of Mount Carmel, Appellant,

*v.*

City of Kingsport, Appellee.

397 S.W.2d 379.

(*Knoxville*, September Term, 1965.)

Opinion filed December 9, 1965.

HEISKELL H. WINSTEAD, Church Hill, and WINFIELD B. HALE, JR., Rogersville, for appellant.

HUNTER, SMITH, DAVIS, NORRIS & WADDEY, W. E. WEBER, JR., Kingsport, TOM H. ROGAN and J. EDWARD HYDER, Rogersville, for appellee.

MR. JUSTICE CRESON delivered the opinion of the Court.

This appeal comes from the Chancery Court of Hawkins County, where the case was heard upon a stipulation of facts. The following constitutes a summary of the facts, as stipulated.

This is an annexation contest between the City of Kingsport and the Town of Mount Carmel, under the Municipal Annexation Act, T.C.A. Sec. 6-304, et seq., as Amended. Prior to the annexation, which is the basis

of this litigation, the City of Kingsport was located entirely within Sullivan County, Tennessee, its west boundary being the western boundary of Sullivan County, and adjacent to the annexed property. The City limits of Kingsport extended to the north fork of Holston River, where the eastern boundary (168) line of Hawkins County is located. The territory which the City of Kingsport seeks to annex lies exclusively within Hawkins County, but adjoins the former boundaries of the City of Kingsport at the middle of the Holston River.

Interested persons within the area Kingsport sought to annex circulated a petition in March of 1964, describing the 830 acres of land located in the 7th Civil District of Hawkins County, Tennessee, adjacent to the then existing boundaries of the City of Kingsport. It is affirmatively shown that the governing bodies of the City of Kingsport approved the application of the property owners and instituted proper annexation proceedings, by referendum pursuant to T.C.A. Sec. 6-311, et seq. Subsequently, other interested parties, in the area sought to be annexed with additional territory, petitioned the governing body of Mount Carmel, requesting that some 900 acres, including practically all of the 830 acres petitioned to be annexed to the City of Kingsport, be annexed by the Town of Mount Carmel. Thereafter, the Town of Mount Carmel instituted annexation proceedings, also by referendum. This situation led to the filing of the Original Bill in the Hawkins County Chancery Court on April 24, 1964. Both municipalities have complied with the provisions of T.C.A. Sec. 6-311, et seq.

The case was heard on March 16, 1965. On May 1, 1965, a decree was rendered in favor of appellee, City of Kingsport, approving its proposed annexation. Many

questions were raised in the course of this proceeding; but the case is before this Court on a single Assignment of Error—that is, that the Chancery Court of Hawkins County erred in holding that under existing law the City of Kingsport, lying wholly within Sullivan County, Tennessee, has the right, under the Tennessee statutes, to annex territory "adjoining to" boundaries of the City of Kingsport, but lying wholly within Hawkins County, Tennessee. Appeal has been duly perfected to this Court.

Both sides of the controversy recognize that the question posed by the Assignment of Error is new to Tennessee. As will appear hereinafter, and likewise conceded, decisions from sister states are in conflict. .

 This Court would observe, at the outset, that the matters of the creation of municipalities and the fixing of their rights, powers, and duties, are all legislative in character; nor is it the function of this Court to say whether municipal annexation is wise or unwise. Further, it is not within the province of this Court to determine the wisdom or lack of wisdom of adopting the concept of multi-county municipalities. It is the function of this Court to construe, when necessary, the statutes of the State of Tennessee in this regard. An examination of Title 6 of the Tennessee Code Annotated will reveal that the Tennessee Legislature has enacted an elaborate scheme of Legislation on the subject of municipal corporations. This legislation deals with virtually all facets of municipalities—(1) their creation, (2) their variant forms, (3) powers, (4) duties, (5) methods of municipal operation, and (6) includes annexation of territory adjoining to their existing boundaries. This scheme of legislation provides two methods of annexation; the first,

by ordinance, and the second by referendum. It is the latter method which is here invoked.

The Court has found it helpful, in attempting to determine the intent of the Tennessee Legislature, to be derived from T.C.A. Sec. 6-311, et seq., and related sections, to view them against the tapestry of the law generally, relating to the right of a municipality located entirely within the boundaries of one County to annex territory "adjoining to" its boundaries, but located wholly within the boundaries of an adjoining County. The most enlightening text authority which has come to our attention is found in 62 C.J.S. Municipal Corporations sec. 46, p. 136, which is as follows:

"Under some, but not other, statutes land in an adjoining county or town may be annexed to a municipality. It has been said, however, that the extension of a city across a county boundary is so unusual and is attended with such manifest practical inconveniences growing out of the relation of the municipal and county governments that an intention to authorize such an act should not be lightly inferred from the use of general language, but should be evidenced by express terms or by the clearest implication."

Case law on this somewhat vexed subject is rather scanty. We might add, here, that our independent research has revealed nothing beyond that cited by counsel in this case. Case authority most nearly in point and supporting the appellant's contention is found in a decision of the Kentucky Supreme Court in *Town of Elsmere v. Tanner* (1932), 245 Ky. 376, 53 S.W.2d 522. That Court, in construing a statute somewhat similar to that of Tennessee, concluded that it did not expressly, or by

clear implication, authorize the annexation by a municipality of territory adjacent to it, but situated in another County. The rationale of his decision seems to be illustrated in the Court's discussion of so-called resulting complexities, concerning taxes, courts, elections, etc., that would arise. The case does not stand for lack of authority in the legislature to enact such a statute. It finds that the legislature of Kentucky has not done so. It should be especially noted, however, that the Kentucky statutes contained a provision for the creation of multi-county municipalities. The Court does not discuss the *in pari materia* rule which will be hereinafter referred to.

Two other jurisdictions here, in result, interdicted multi-county municipalities, by annexation. The States of Iowa and California, in the cases of *Tabor & N. Ry. Co. v. Dyson* (1892), 86 Iowa 310, 53 N.W. 245, and *County of San Mateo v. City Council of City of Palo Alto* (1959), 168 Cal.App.2d 220, 335 P.2d 1013, have reasoned in these opinions that the multi-county municipality concept is either unknown or contrary to the governmental system of those states.

Reported cases from other jurisdictions are to the contrary, both in reasoning and result. See *Schildnecht v. City of Joplin* (1931), 226 Mo.App. 47, 41 S.W.2d 590; *State ex inf. Taylor ex rel. Kansas City v. North Kansas City* (1950), 360 Mo. 374, 228 S.W.2d 762; *Portsmouth Savings Bank v. Smith* (1906), 74 Kan. 223, 86 P. 462; *Village of Wakefield v. Utecht* (1911), 90 Neb. 252, 133 N.W. 240. These authorities find "clear implication" from the fact that other sections of the statutory municipal law of those states recognize the multi-county municipal concept; though the power of annexation beyond county lines is not explicitly conferred.

■ The multi-county municipality is not novel to Tennessee. This Court judicially knows that the Town of Petersburg, incorporated in 1837, lies in Lincoln and Marshall Counties; the Town of Kenton, incorporated in 1899, lies in Obion and Gibson Counties; and Oliver Springs, incorporated in 1905, lies in Anderson and Roane Counties. More recently, multi-county municipalities have become even more commonplace in Tennessee, with the incorporation of Oak Ridge, lying in Anderson and Roane Counties; Scotts Hill, lying in Henderson and Decatur Counties; Ridgetop, in Robertson and Davidson Counties; Monteagle, in Grundy and Marion Counties, and Milledgeville, in Hardin, Chester and McNairy Counties.

The Section of the Code critically involved here is T.C.A. Sec. 6-311, et seq. In pertinent part, the aforementioned Section reads as follows:

"A municipality, when petitioned by interested persons, or upon its own initiative, by resolution, may propose extension of its corporate limits by the annexation of *territory adjoining* to its existing boundaries."

The abovementioned Section is a part of Title 6 of Tennessee Code Annotated. This Title deals exhaustively with the subject of municipal corporations in Tennessee. In many chapters and sections of that Title, the creation and existence of multi-county municipalities is recognized; for example, T.C.A. Sec. 6-101, et seq. specifically provides for the incorporation of multi-county municipalities. Other Sections, being integral parts of the general scheme of legislation pertaining to municipalities, embodied in Title 6, recognizes, beyond room for doubt, the statutory authorization of multi-county mu-

nicipalities. In addition to such references to be found in T.C.A. 6-101, which is the general law governing incorporation of municipalities, other Chapters embrace similar recognition—such as T.C.A. Sec. 6-219, relating to abolition of Chapter—Sec. 6-501, et seq., relating to municipal elections. The same is true of Sec. 6-3002 and Sec. 6-3101, which enact alternative methods of municipal incorporation.

Taking into account that all question of constitutionality of municipal annexation has been removed, see *Witt v. McCanless* (1956), 200 Tenn. 360, 292 S.W.2d 392; *Morton v. Johnson City* (1960), 206 Tenn. 411, 333 S.W.2d 924, and that outside authority is not controlling, and only persuasive to the extent of this Court's regard for the logic and reasoning of the foreign Court's opinion, we now come to what we regard as determinative of the instant case.

■■ The various Chapters of Title 6 of Tennessee Code Annotated indisputably constitute a system or scheme of legislation. This Court has previously and unqualifiedly stated that statutes forming a system or scheme of legislation should be construed so as to make that scheme consistent in all its parts, and uniform in its operation. *Davis v. Beeler* (1947), 185 Tenn. 638, 207 S.W.2d 343. The Sections of Title 6 of Tennessee Code Annotated which have been heretofore alluded to by number, being enactments on the same subject matter, must be read *in pari materia*. Indeed, these Sections are to be considered as if part of a single law. *State v. Allman* (1934), 167 Tenn. 240, 68 S.W.2d 478. When the above rules are applied, as they must be, we then have one law, or body of law, which repeatedly enacts the principle of the multi-county concept. Nowhere in the

provisions of Title 6 of Tennessee Code Annotated, including T.C.A. Sec. 6-311, is the principle rejected or the authority denied. The annexation statutes state the condition to be that the annexed territory must be "adjoining to its existing boundaries". Nowhere is there to be found any condition or limitation predicated upon County lines. The language adopted by the legislature seems reasonably clear. It is not the function of this Court to alter or amend that language or to make it mean something other than that which it says. *McBrayer v. Dixie Mercerizing Co.* (1940), 176 Tenn. 560, 144 S.W.2d 764.

██ Finding in these statutes of Tennessee, read together as they must be, the repeated clear implication of the valid legal status of multi-county municipalities, we inexorably come to the conclusion that appellant's Assignment of Error must be overruled; and the judgment of the Court below affirmed. Costs of the Court below will remain as adjudged in that Court; and costs of this appeal are assessed against appellant, Town of Mount Carmel.

This case has been admirably handled by all concerned. The Memorandum Opinion of the Trial Court and the Briefs of counsel have been of inestimable assistance.

MR. CHIEF JUSTICE BURNETT, and WHITE, DYER and CHATTIN, JUSTICES, concur.