# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 13, 2001 Session

# MORRISTOWN FIREFIGHTERS ASSOCIATION v. CITY OF MORRISTOWN, et al.

**Appeal from the Chancery Court for Hamblen County**
**No. 99-526    Kindall T. Lawson, Judge, by interchange**
 **FILED MARCH 20, 2001** 

**No. E2000-01942-COA-R3-CV**

---

In July 1999, two vacancies arose within the City of Morristown's fire department ("Fire Department") due to the retirement of a battalion chief and a lieutenant. The Civil Service Act provides the procedure for filling vacancies in Morristown's fire department and requires the City to fill vacancies from a Roster prepared by the Civil Service Board ("Board"). When the two vacancies occurred, the Roster in place had been certified in August 1998, and updated by the Board in November 1998 ("1998 Roster"). The City, however, wanted the Board to prepare a new Roster. The Board did not create a new Roster until September 1999 ("1999 Roster"), and in the meantime, the two positions remained unfilled. The City filled the vacancies from the 1999 Roster. The Morristown Firefighters Association ("Plaintiff") brought suit against the City of Morristown, its mayor and City Council members ("Defendants"), alleging violations of the Civil Service Act for Defendants' failure to fill the vacancies from the 1998 Roster. The Trial Court held in favor of Plaintiff and ordered Defendants to fill the two vacancies from the 1998 Roster. Defendants appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J. and CHARLES D. SUSANO, JR., J., joined.

Richard C. Jessee and Lori L. Jessee, Morristown, Tennessee, for the Appellants, City of Morristown, Mayor John R. Johnson, and Morristown City Council Members, A. Quillen Eiseman, Claude Jinks, William J. Rooney and Kay Senter.

Timothy A. Priest and Adam M. Priest, Knoxville, Tennessee, for the Appellee, Morristown Firefighters Association.

# OPINION

## Background

The Morristown Firefighters Association ("Plaintiff") filed suit seeking a restraining order and permanent injunction against the City of Morristown, its City Council members, and its mayor ("Defendants") regarding two promotions in the City's Fire Department. Plaintiff alleged that Defendants violated the Civil Service Act by failing to make promotions from the Roster of eligible candidates in existence when the vacancies arose.

In July 1999, two vacancies occurred in the Morristown Fire Department ("Fire Department") for the positions of battalion chief and lieutenant. Since these positions were located high in the chain-of-command, the promotions to fill these positions would create vacancies in the lower ranks. Placement and promotion of employees of the Fire Department are governed by the Civil Service Act which requires that promotions be made from the top three persons on the Roster. Priv. L. No. 143 (1994). The Roster is prepared by the Civil Service Board ("Board") after a testing and interview process.

When the vacancies occurred in July 1999, the existing Roster had been certified in August 1998, and updated by the Board in November 1998 ("1998 Roster"). The testing and interview process for the 1998 Roster was conducted by the Board in May 1998. Defendants waited to fill the vacancies until the Board certified a new Roster in September 1999 ("1999 Roster"). Defendants contend that the Board had failed to maintain an up to date Roster as required of it, and, therefore, the City properly refused to fill the vacancy from the 1998 Roster. Defendants maintain that the 1998 Roster was invalid at the time the vacancies arose. Plaintiff contends that the Civil Service Act mandates that the Roster in existence at the time a vacancy occurs is the Roster from which the three candidates must be chosen. Plaintiff says the 1998 Roster is that Roster for these two vacancies.

The Civil Service Act contains the following:

SECTION 3. BE IT FURTHER ENACTED: All future appointments to and promotions in such departments, except as otherwise provided in this Act, shall be made on the basis of filling the position with the best qualified candidate, using the following method:

Subject to the standards set forth in this Act, the city governing body shall meet with the Board and formulate minimum requirements and weighted selection criteria for each position in the Classified Service. . . . After the enunciation of such standards, a Roster shall be kept by the Board of all full-time

personnel in the Classified Service indicating what job classifications within each respective departments are eligible to fill. A Roster shall also be kept on all applicants to become members of the Classified Service with appropriate indication of what job classifications such applicants are eligible to fill.

After the enunciation of such standards, no vacancy shall be filled except by a person on the Roster of persons having the requisite qualifications to fill such vacancy.

If any vacancy shall occur within any branch of the Classified Service, the vacancy shall be offered first to that member of such branch qualified on the Roster who shall be the best qualified. . . .

SECTION 4. BE IT FURTHER ENACTED: Functions and Duties of the Civil Service Board. . . .

It shall be the duty of the Board:

(f)     To see that the job classifications, the standard for filling said classifications and the Roster of eligible appointees for each classification are kept continuously up to date, and posted in the respective departments of the Classified Service. . . .

\* \* \* \* \* \*

Appointments to Certain Positions: (a) When a position in the Classified Service becomes vacant, whether entry level or promotional, the governing body of the City of Morristown shall make requisition upon the Board for the names of the three (3) persons eligible for appointment. The Board shall certify the names of the three (3) persons highest on the eligible list willing to accept employment.

\* \* \* \* \* \*

(d)     Whenever a requisition is to be made, or whenever a position is held by a temporary appointee and an eligible list for the class of such position exists, the governing body shall appoint a person from among the persons so certified for such position.

When seeking placement on the Roster, applicants undergo testing and interviews and are given weighted scores by the Board for such criteria as experience, test scores, education and interviews. The Civil Service Commission Rules and Regulations ("Rules") further addresses the testing process and provides, in pertinent part, the following:

1. EXAMINATIONS

    a. Testing for promotions will be administered on an annual basis. . . .

2. ADVERTISING AND REQUEST FOR PROMOTION:

    a. On or before January 10th of each year, the Civil Service Commission will advise Fire and Police Departments personnel that for [sic] promotional Roster testing will be accepted from January 15th through the 31st. No requests will be accepted after January 31st.

    b. Applicants will submit a written request to the Chief of their department no later than January 31st.

    c. The City Personnel Office will review each request to verify eligibility. Request [sic] will be forwarded to the Civil Service Commission no later than February 10th.

3. TESTS AND TESTING

    a. Upon receipt of applications by the Civil Service Commission, the Commission shall schedule a date for testing and order the appropriate examinations. . . .

* * * * * *

    e. Test scores shall be carried over from year-to-year. However, after a test score is two years old an applicant may request to be retested

> along with other applicants at the annual test
> date.

Neither the Civil Service Act nor the Rules provide any specific deadline for the Board's certification or completion of the Roster.

In May 1998, after the Fire Chief submitted a list of eligible candidates and requested testing, the Board conducted testing and interviews of potential candidates. The 1998 Roster was certified in August 1998, and apparently updated in November 1998. In April 1999, the Fire Chief informed the Board he anticipated two vacancies and requested that the Board conduct testing and interviews so that a new Roster could be created. The Fire Chief explained that since the 1998 Roster was certified, several firefighters not on the 1998 Roster became eligible for promotion but had not undergone the testing and interview process. Moreover, the City contended that several vacancies had been filled from the 1998 Roster, and as a result, the 1998 Roster was depleted.

In July 1999, the two anticipated vacancies in the Fire Department occurred. The City Council met twice in July 1999, and once in August 1999, but did not use the 1998 Roster, which Defendants claimed was not current, to fill the vacancies. Instead, the City Council waited for the creation of a new Roster in 1999.

The Board, for the first time, in June 1999, apparently attempted to set a regular, annual testing date, June 30.[1] The Board, however, missed this deadline and did not perform testing until August 19, 1999. In mid-September 1999, the Board certified the new Roster ("1999 Roster"). The City Council filled the vacancies from the 1999 Roster. As predicted by the Fire Chief, candidates not on the 1998 Roster made the 1999 Roster.

Before the City Council filled the two vacancies from the 1999 Roster, Plaintiff brought suit, requesting that the Trial Court order Defendants to use the 1998 Roster to fill the vacancies and to enjoin Morristown from creating a new Roster until the vacancies were filled from the 1998 Roster. After the promotions were made from the 1999 Roster, Plaintiff amended its Complaint to allege that some of its members listed on the 1998 Roster and eligible for the promotions at the time the vacancies occurred were not promoted.

The Trial Court found in favor of Plaintiff, holding in its Memorandum Opinion that the only list of qualified applicants in existence at the time of the vacancies was the 1998 Roster. Citing §§ 3 and 9 of the Civil Service Act, the Trial Court further found that the City was not authorized to delay promotions until a new Roster was created and that the Civil Service Act mandated that the City make the promotions from the existing Roster. The Trial Court held that the

---

[1] The record on appeal shows that the Board's chairperson testified that June 30th was the deadline for the applications and that the testing would be conducted sometime thereafter. The Board's minutes from its June 7, 1999, meeting, however, state that "it was agreed tests would be given the same time every year with the cut off date being June 30."

promotions made by the City Council from the 1999 Roster were invalid and that the promotions should be made from the 1998 Roster. Defendants appeal.

## Discussion

While not stated exactly as such, Defendants raise the following issues on appeal: 1) whether the Trial Court erred in holding that the City of Morristown was not authorized to delay promotions to fill two vacancies which arose in July 1999, when the Roster of eligible candidates had not been updated by the Board since 1998; and 2) whether the Trial Court erroneously held that § 9 of the Civil Service Act, requires the City of Morristown to fill vacancies from the Roster in existence when the vacancy occurs.

This appeal involves the interpretation of the Civil Service Act and the Civil Service Commission Rules. Our Supreme Court in *Gleaves v. Checker Cab Transit Corp., Inc.,* 15 S.W.3d 799, 802-803 (Tenn. 2000), summarized our role when the issue involves statutory construction:

> 'Construction of a statute is a question of law which we review *de novo* with no presumption of correctness.' *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 924 (Tenn. 1998). . . . A basic rule of statutory construction is to ascertain and give effect to the intention and purpose of the legislature. *Carson Creek Vacation Resorts, Inc. v. State Dep't. of Revenue,* 865 S.W.2d 1, 2 (Tenn. 1993). In determining legislative intent and purpose, a court must not 'unduly restrict[] or expand[] a statute's coverage beyond its intended scope.' *Worely v. Weigels, Inc.,* 919 S.W.2d 589, 593 (Tenn. 1995). . . . Rather, a court ascertains a statute's purpose from the plain and ordinary meaning of its language, *see Westland West Community Ass'n. v. Knox County,* 948 S.W.2d 281, 283 (Tenn. 1997), 'without forced or subtle construction that would limit or extend the meaning of the language.' *Carson Creek Vacation Resorts, Inc.,* 865 S.W.2d at 2.
>
> * * * * * *
>
> [I]t is not for the courts to alter or amend a statute. *See Town of Mount Carmel v. City of Kingsport,* 217 Tenn. 298, 306, 397 S.W.2d 379, 382 (1965); *see also Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 453 (Tenn. 1995); *Manahan v. State,* 188 Tenn. 394, 397, 219 S.W.2d 900, 901 (1949). Moreover, a court must not question the 'reasonableness of [a] statute or substitut[e] [its] own policy judgments for those of the legislature.' *Bellsouth Telecomms., Inc. v. Greer,* 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). Instead, courts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.' *Id.* Accordingly,

courts must construe a statute as it is written. *See Jackson v. Jackson,* 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948).

(alterations in original).

In this matter, we must consider two competing interests found in the Civil Service Act: Defendants' interest in obtaining the best qualified candidates from a continuously updated Roster as outlined in §§ 3 and 4 of the Civil Service Act and Plaintiff's interest that Defendants select candidates from the Roster in existence when the vacancies occur as provided by § 9 of the Civil Service Act. A common purpose running throughout the Civil Service Act is that it is "'designed to eradicate the system of making appointments primarily from political consideration . . . [and] to establish a merit system of fitness and efficiency as the basis of appointments to the civil service.'" *Metropolitan Gov't of Nashville and Davidson County v. Poe*, 383 S.W.2d 265, 271-72 (Tenn. 1964) (quoting *City of Knoxville v. Smith*, 138 S.W.2d 422 (1940)).

Despite the presence of civil service legislation, the facts of this case demonstrate that difficulties with promotions still arise. Although there is no proof in the record that the promotions were politicized in this matter, the Civil Service Act and the Rules could be manipulated such that the timing of the creation of a new Roster would facilitate the placement of a favored candidate in a vacancy. Although § 4 of the Civil Service Act directs the Board to keep the Roster "continuously up to date," neither the Act nor the Rules provide either a specific deadline for the Board to prepare new Rosters or an expiration date for an existing Roster.

When the two vacancies occurred in July 1999, the only Roster in existence and from which Defendants could fill the vacancies was the 1998 Roster. The proof in the record establishes that when the 1999 Roster was certified, some firefighters not on the 1998 Roster made the 1999 Roster and were placed ahead of others who were on the 1998 Roster. This Court, although cognizant of the potential for problems created by irregular dates for testing and certification of Rosters, does not have "authority to supply the void. . . . That is a legislative function. We are restricted to enforcing the procedure that is expressly prescribed." *Blair v. State ex rel. Watts*, 555 S.W.2d 709, 713 (Tenn. 1979).

Although we agree that Defendants have an interest in obtaining the best qualified candidates for vacancies and that regular testing serves this interest, we agree with the Trial Court's determination that Defendants must make promotions from the Roster in existence when the vacancies occur. Our Supreme Court has held that "'[a] valid appointment can only be made *by due observation of the civil service rules*, and must be made from the appropriate eligible list.'" *Atkin v. City of Knoxville*, 315 S.W.2d 115, 116 (Tenn. 1958) (alteration in original) (quoting 3 McQuillan on Municipal Corporations § 12.80 3ʳᵈ ed.). Further, our Supreme Court held that municipalities must follow the mandate of the applicable civil service legislation when selecting employees for civil service positions and that they do not have any discretion when performing this function. *Blair*, 555 S.W.2d at 712 (holding that "[i]t is . . . mandatory that the City Manager 'make the desired appointment from the eligible list so certified to him'").

Boiled down to its essential elements, Defendants argue the Board did not do its job because it failed to keep the Roster "continuously up to date . . . ." Defendants maintain there was no valid Roster in existence at the time the vacancies occurred, and this failure allowed Defendants to wait until the 1999 Roster was created.

While Defendants's argument is well-made, we are unpersuaded. The 1998 Roster was the only one in existence when the vacancies occurred. We note that the 1998 Roster was less than twelve months old when the vacancies occurred. Also, as discussed above, neither the Act nor the Rules provide either a specific deadline by which a new Roster had to be prepared or a time limit after which the 1998 Roster became invalid.

Section 9 of the Civil Service Act provides that when a vacancy occurs, Defendants "shall make requisition upon the Board for the names of the three (3) persons eligible for appointment. The Board shall certify the names of three (3) persons highest on the eligible list willing to accept employment." Section 9 then provides that "the governing body shall appoint a person from among the persons so certified for such position." This language provides no authority either to Defendants or to the Board to wait for an updated list, but rather directs Defendants and the Board to use the Roster in place at the time the vacancy occurs. Moreover, nothing in the Civil Service Act or the Rules provides a time when a certified Roster stops being valid. Accordingly, we affirm the Trial Court's holding that Defendants must fill the vacancies from the 1998 Roster since it was the Roster in existence when the vacancies occurred.

While we find nothing in the record before us to support any argument that Defendants, in waiting to make the appointments from the 1999 Roster, acted "from political consideration . . .", adoption of Defendants' position would increase the risk of political considerations entering into the filling of vacancies. Our adoption of the Trial Court's holding means that neither the City nor the Board has the option of waiting for a new Roster in the hopes that a more politically favored candidate will be listed on the new Roster. Adoption of Defendants' position would put the system more at risk rather than helping to eradicate "the system of making appointments primarily from political consideration. . . ." *Metropolitan Gov't of Nashville and Davidson County,* 383 S.W. 2d at 271. Such a result would be contrary to the purpose of the Civil Service Act.

Defendants also contend that without any discretion to decide when to fill vacancies of civil service positions, the City's hands would be tied if it needed to make reductions in the Fire Department's force due to exigent circumstances, including budget concerns. This argument is unpersuasive. The Trial Court's decision, which we affirm, in no way ties the City's hands if the City no longer needs or desires to maintain a particular position or cannot afford to place someone in that position. In such an event, there is no vacancy, and, therefore, the procedure mandated by the Civil Service Act to fill a vacancy would not be applicable.

**CONCLUSION**

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellants, the City of Morristown, Mayor John R. Johnson, Morristown City Council Members, A. Quillen Eiseman, Claude Jinks, William J. Rooney and Kay Senter, and their surety.

_____
D. MICHAEL SWINEY, JUDGE