IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 21, 2010, Session

**STATE OF TENNESSEE v. ASHLEE V. DOBBS**

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-CR34008      James G. Martin, III, Judge**

_____

**No. M2009-01896-CCA-R3-CD - Filed June 10, 2011**

_____

A Williamson County grand jury indicted the Defendant, Ashlee V. Dobbs, on five counts of fraudulent use of a credit card and one count of theft over $500. A bench trial was conducted, and, at the conclusion of the State's proof, the Defendant filed a motion to dismiss the charges for failure to establish venue. The trial court dismissed four of the counts for failure to establish venue, found the Defendant not guilty of one count, and dismissed the final count by agreement of the parties. The State appeals, contending that the trial court erred when it dismissed four of the counts for lack of venue. After a thorough review of the record and applicable law, we conclude that the trial court properly dismissed two counts for failure of proof of venue but erred when it dismissed the remaining two counts for the same reason. As such, we affirm in part and reverse in part the trial court's judgments, and we remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Kim Helper, District Attorney General; Tammy J. Rettig, Assistant District Attorney General, for the Appellant, State of Tennessee.

Stanley A. Kweller and J. Robin McKinney, Nashville, Tennessee, for the Appellee, Ashlee V. Dobbs.

**OPINION**
**I. Facts**

This case arises from the Defendant's alleged improper use of her employers' credit card and the taking of her employers' personal items. The Defendant worked as a nanny for the victims, Mr. and Mrs. Carver. A Williamson County grand jury indicted the Defendant for five counts of the fraudulent use of a credit card for the purpose of obtaining property, services, credit, or anything else of value worth less than $500 and one count of theft of property valued over $500. The counts alleged the following locations and dates:

- Count 1: Fraudulent use of the Carvers' credit card on August 7, 2008, at a Mapco in Brentwood, Tennessee

- Count 2: Fraudulent use of the Carvers' credit card on August 13, 2008, at a Shell in Brentwood, Tennessee

- Count 3: Fraudulent use of the Carvers' credit card on or about August 25, 2008, at Great Clips in Brentwood, Tennessee

- Count 4: Fraudulent use of the Carvers' credit card on or about July 17, 2008 at a Publix in Franklin, Tennessee.

- Count 5: Fraudulent use of the Carvers' credit card on or about August 22, 2008, at Smoothie King in Franklin, Tennessee

- Count 6: Theft of property of a value greater than $500 between June 1, 2008, and September 1, 2008

After the Defendant pled not guilty and waived a jury trial, the trial court conducted a bench trial, where the following evidence was presented:[1] Mrs. Carver testified that, around the time of these events, she lived in Brentwood, Tennessee, in the Montclair subdivision off Moore's Lane. She said she and her husband, who both worked in medical sales, were in need of a nanny to care for their two youngest children. Their oldest son was in college and not living at home at the time. As such, they posted an advertisement on the David Lipscomb career board, and the Defendant contacted them about the position. The Carvers hired the Defendant, who began her employment with them in March of 2008. The Carvers' agreement with the Defendant included that they would compensate her at a rate of $11 per hour and pay $10 per week for her gasoline. If the Defendant's driving expenses exceeded this amount, she was to keep track of these additional expenses in order for the Carvers to compensate her appropriately.

_____

[1]We will only briefly discuss the facts of the case as they are, in large part, not relevant to the issues presented on appeal.

In order to cover additional expenses, Mrs. Carver testified she kept $100 in small bills in a red cup in the kitchen and a Regions Visa credit card, with the last four digits of 8592, in the top drawer of a desk in the kitchen. The Defendant was allowed to use the credit card for occasional expenses involving the children, including dry cleaning, dance lessons, or haircuts. The Defendant was to take the card at the time of the necessary expense and return the card, along with any receipts, before she left for the evening. Mrs. Carver recalled that, for a period of six weeks or so, she checked and confirmed that the Defendant left the credit card in the kitchen desk drawer. She said that, at first, the statements were between $50 and $200 and that all of the expenses were authorized.

Mrs. Carver testified that she had originally opened the Regions Visa credit card to establish credit for her son who was in college. She said he was unaware of this credit card account and that the only card associated with that account was the card she allowed the Defendant to use. Mrs. Carver said she and her husband did not use this credit card because the interest rate was high but instead used a separate credit card with a much lower interest rate.

Mrs. Carver described the Defendant's services in the beginning as "[v]ery good," saying that the children seemed happy. For six or eight weeks nothing appeared amiss with the credit card usage. In the summer of 2008, the Defendant began working for the Carvers full-time, as the children were out of school. In June, Mrs. Carver noticed that one of her bathing suits was missing, so she asked the Defendant if the Defendant had seen it. The Defendant explained that she had borrowed the bathing suit one day when she took the children swimming but had forgotten to bring a bathing suit for herself. Mrs. Carver said that was fine, and asked the Defendant to return the suit and not to borrow things without her permission in the future. Mrs. Carver said she allowed the Defendant to borrow clothing two times apart from this incident.

Mrs. Carver recalled that, on one occasion in June 2008, the Defendant came to her and told her that she had accidently charged gas on the Carvers' credit card. The Defendant explained that she had not noticed what credit card she pulled out of her wallet and wanted to inform Mrs. Carver of the mistake. Mrs. Carver agreed to pay the $40 charge but clearly stated that the Defendant should never use that credit card for gas.

Mrs. Carver described how things began to change, recalling that, on one occasion, she came home unexpectedly to find the Defendant wearing a bracelet that belonged to her. She said to the Defendant, "I have a bracelet just like that" and then went and looked in her jewelry box and the bracelet was missing. After using the restroom, she again looked in her jewelry box and the bracelet was returned. She noticed that the Defendant was also wearing a necklace that belonged to her, but the Defendant denied this and said the Defendant's

grandmother had given her the necklace. Even when Mrs. Carver pressed the Defendant, showing her that the bracelet and necklace matched, the Defendant maintained that the necklace belonged to her. The State introduced multiple pictures, taken from the hard drive of the Carvers' computer, to which the Defendant had access, that depicted the Defendant wearing that necklace.

Mrs. Carver testified that other things also began to change. The Defendant's responsibilities included folding the laundry but never to wash it. Mrs. Carver explained that she and her husband hung many of their clothes to dry, so they would wash the clothing on the weekend, and she sometimes asked the Defendant to fold what was in the dryer. Mrs. Carver returned home one day to find three items of her clothing in the dryer that she had not washed. She asked the Defendant about this, and the Defendant said that she was doing some laundry so she grabbed some of Mrs. Carver's clothing to add to her load of wash. Mrs. Carver testified it was not possible that these items of clothing were dirty because it had been a long time since she had worn the items she found in the dryer.

In August of 2008, Mrs. Carver left for a business trip in Atlanta, and her family was going to come and join her for the weekend. Before leaving, she arranged her clothing in a particular way so that she would notice if items went missing while she was gone. While she was away, her husband called her and asked if she had left a ladder in her closet. Upon her return she noticed that, in addition to the ladder being erected in her closet, several items of clothing were missing: an Ed Hardy shirt, a grey and black vest, and a new shirt that still had the tags attached. Mrs. Carver estimated the value of the Ed Hardy shirt to be $75, and the value of the new shirt with tags to be $38.

Later that same day, the Defendant arrived to watch the children. While the Defendant was there, Mrs. Carver opened a credit card bill from the credit card that she had given the Defendant permission to use and noticed the bill was extensive. She immediately went to the drawer where she kept the credit card, and the credit card was missing. Mrs. Carver asked the Defendant about the credit card, and the Defendant told her that she forgot to return it and that she had it with her. Mrs. Carver asked the Defendant to relinquish the credit card, which she did. Mrs. Carver then asked the Defendant why gas charges appeared on the credit card statement, and the Defendant said her purse had been stolen from the gym two weeks before. Mrs. Carver said to the Defendant, "If your purse was stolen and my credit card was stolen, then how am I holding the credit card right now?" The Defendant told her that a man from the gym called her sometime after her purse had been stolen and told her that he was in possession of her purse. The Defendant said she went to the gym and retrieved her purse.

Mrs. Carver said she was confused by the charges on the card because there were gas

charges from different counties. The Defendant's attorney objected and asked that her testimony be confined to what had happened in Williamson County. The State's attorney agreed that the State was confined to present only evidence of the offenses that occurred in Williamson County.

Mrs. Carver confronted the Defendant with the credit card statements and asked her about the ladder in her closet. The Defendant began to cry, denying that she stole Mrs. Carver's clothing and that she had charged gas on the credit card. The Defendant explained that she erected the ladder in Mrs. Carver's closet to reach Mrs. Carver's cowboy boots, which she borrowed while Mrs. Carver was away. Mrs. Carver said that, before confronting the Defendant about the ladder in her closet, she asked her daughter if the Defendant had been in her closet while she was away in Atlanta, and her daughter said, yes, that the Defendant had gone into the closet and dressed up in Mrs. Carver's clothing and taken pictures of herself around the house. Mrs. Carver's daughter said that this occurred frequently, though, so she assumed her mother approved of the Defendant acting this way. Mrs. Carver then asked the Defendant where her cowboy boots were, and the Defendant said they were located in the Defendant's car trunk.

Mrs. Carver asked the Defendant to get the boots, and then Mrs. Carver, accompanied by her husband, met the Defendant at the Defendant's car. As the Defendant was retrieving the boots, Mrs. Carver noticed multiple items belonging to her located in the trunk. She asked the Defendant about them, and the Defendant said, "Here," and handed them to her. Mrs. Carver asked the Defendant why she had taken the clothes, and the Defendant said she was sorry. The Defendant then said she had other items belonging to Mrs. Carver at her house and said she would go and get them to return them to Mrs. Carver. Mr. Carver informed the Defendant if she did not return the items he would be contacting the police to report that the items were missing. The Defendant was supposed to return a green tank top, T-shirts, and the Carvers' children's car seats.

The Defendant left, and shortly thereafter an attorney contacted the Carvers and told them not to contact the Defendant for any reason. The attorney sent Mrs. Carver two tank tops in the mail, both from Banana Republic and valued at under $50, but Mrs. Carver never received other items that she knew were missing. The items that remained missing included a White Sox hat that belonged to Mr. Carver, and Mrs. Carver identified the hat in pictures introduced by the State that depicted the Defendant wearing the hat.

Mrs. Carver testified that she paid the entire credit card balance to ensure that her son's credit was not affected. Regarding which of the Defendant's fraudulent transactions involving their credit card were committed in Williamson County, Mrs. Carver said, "The two that are in Williamson County were Mapco on 8/7, and a Shell station on 8/13 that took

place in Williamson County." These charges totaled $70.24.

Mrs. Carver testified about another unauthorized charge on the credit card, saying that there was a $20 charge from Great Clips with a $7 tip. She said the Defendant's compensation did not include the Carvers paying for her hair cuts. Further, the Carvers' children got their hair cut at Snip-Its and not Great Clips. Mrs. Carver testified there was also an unauthorized charge to Smoothie King in the amount of $13.73.

After learning about the unauthorized charges, Mrs. Carver obtained receipts from a local grocery store, where the Defendant sometimes picked up groceries for her family. Those receipts indicated that the Defendant was also purchasing items, such as tilapia and almonds, without permission.

Mrs. Carver testified that, while the Defendant was their employee, they had talked about the Defendant moving with them to Florida. The Defendant seemed excited about this prospect for a variety of reasons. By July, however, Mrs. Carver had enough concerns about the Defendant's work that she no longer considered that to be an option.

On cross-examination, Mrs. Carver agreed she had been served with a civil lawsuit filed by the Defendant a few days before her husband testified before the grand jury in regard to this case. Mrs. Carver agreed that, during the summer, the Defendant drove the Carvers' children to voice lessons, the YMCA, and to get haircuts. Mrs. Carver agreed that she did not mention missing clothing to the police when she first spoke with them, and she also did not mention the missing clothing at the preliminary hearing.

Deborah Imes testified that she was the general manager for the Cornerstone location of Great Clips for Hair. She testified that her salon maintained records about each customer's name, address, phone number, and technical notes, including the date of their last visit and the name of the person who cut the customer's hair. The company also retained records of all the charged transactions, which were attached to the daily paperwork. Imes then offered a copy of a charged transaction dated August 25, 2008, that bore the Defendant's signature. Imes testified that the store location was "at our Cool Springs Festival, which is on Moore's Lane in Brentwood, Tennessee." Imes testified that the last four digits of the credit card were 8592.

Imes testified that, at some point after August 25, she received a telephone call from a woman inquiring about the Defendant's use of a credit card to pay for a haircut at Great Clips. Imes gave the woman this information and offered to call the Defendant, ostensibly to ensure the Defendant was satisfied with her haircut, in order to ensure that the Defendant was in fact the person who used the woman's credit card. Imes called the Defendant, who

informed her that she was satisfied with the haircut she had received at Great Clips. Imes then called back the woman who had originally called her and relayed the details of her conversation with the Defendant.

On cross-examination, Imes agreed that the Defendant gave her accurate name and telephone number when she received her haircut. The Defendant also signed her name to the charge card receipt, even though the credit card was not listed in her name. Imes further agreed that the woman who called her to verify this charge never asked her to remove the charge because it was unauthorized.

At the close of the State's proof, the trial court dismissed Count 4, finding the State failed to establish that the Publix where the Defendant allegedly fraudulently used the Carvers' credit card was located in Williamson County. On appeal, the State does not appeal the dismissal of Count 4. The trial court also reduced Count 6 to theft under $500, and adjourned until the following day.

When trial reconvened, the State introduced a copy of the "Code of Ordinances" for the city of Brentwood. Based on this ordinance, the trial court found that "Brentwood was not chartered by a private act but . . . [rather] by following the provision of the Tennessee Code relating to the creation of a city using a mayor and board of commission form of government." The State requested that the trial court, based upon this ordinance, take judicial notice of Brentwood's being within Williamson County.

The Defendant testified, describing the history of her employment with the Carvers. She testified that, earlier on the morning she was accused of fraudulently using the Carvers' credit card to buy drinks at Smoothie King, she announced she was going to Smoothie King and asked the Carvers whether they wanted a drink from Smoothie King. According to the Defendant, the Carvers declined, so she went to Smoothie King and bought drinks for herself and for the Carvers' son, Lawson. She testified that the Smoothie King receipt reflected a charge of over thirteen dollars because she was buying two drinks, one for herself and one for Lawson.

The Defendant's mother testified that she had only positive interactions with Mrs. Carver and that, on one occasion, Mrs. Carver praised the Defendant for the excellent way she looked after the Carver children. Surene Dobson, a longtime friend of the Defendant's mother, testified that the Defendant occasionally babysat for her. She said the Defendant had always been honest with her and had never done anything "improper."

Mrs. Carver testified in rebuttal, that on August 22 the Defendant returned with only one drink from Smoothie King and that the Carvers' son had departed for school long before

-7-

the Defendant returned from Smoothie King. Mr. Carver testified, confirming that his son had already left for school when the Defendant returned from Smoothie King on August 22.

At the close of proof, the trial court found that the State failed to carry its burden of proof as to Count 5, which charged the Defendant with the fraudulent use of the Carvers' credit card at Smoothie King, and it reiterated that it had dismissed each remaining count for failure to establish venue. An order dated August 15, 2009, and filed August 20, 2009, states, "[A]fter hearing a portion of the evidence in this case and testimony of witnesses, Counts 1, 2, 3, and 6 are dismissed." On September 8, 2009, the State filed a timely notice of appeal of the trial court's judgment dismissing Counts 1, 2, 3, and 6 of the indictment against the Defendant.

On October 12, 2009, approximately one month after the State filed its notice of appeal in this case, the trial court entered judgments of acquittal as to Counts 1, 2, 3, 5, and 6, and it entered a judgment dismissing Count 4 of the indictment against the Defendant.

## II. Analysis

On appeal, the State contends the trial court erred when it dismissed counts 1, 2, 3, and 6 for failure to establish venue. The Defendant responds that, because the trial court entered judgments of acquittal on all counts, the State has no grounds for appeal in this case, and thus this appeal is frivolous. She argues also that, even if the judgments of acquittal do not bar the State's appeal, the trial court correctly dismissed the counts for failure to prove venue.

### A. Grounds for the State's Appeal in this Case

The State argues the trial court's October 2009 judgments of acquittal were void because the trial court lost jurisdiction over the Defendant's case when the State filed its notice of appeal of the trial court's dismissal of Counts 1, 2, 3, and 6 for failure to prove venue. The Defendant responds that, because a trial court "speaks only through its Orders and Judgments entered on the minutes," the October 2009 judgments were effective to bar re-prosecution of the indictments. She contends that, because Tennessee Rule of Appellate Procedure 3(c)(1) does not allow the State to appeal a judgment of acquittal, the State has no ground upon which to appeal the trial court's decision in this case. Further, the Defendant alleges that, because the State has no grounds for appeal, its appeal is "frivolous" within the meaning of Tennessee Code Annotated section 27-1-122.

In criminal cases, when a notice of appeal is filed, the jurisdiction of the Court of Criminal Appeals attaches, and the trial court loses jurisdiction. *State v. Pendergrass*, 927

S.W.2d 834, 837 (Tenn. 1996). Having lost jurisdiction, the trial court has no power to amend its judgment. *Id*. Any judgment made outside the trial court's jurisdiction is void. *State v. Green*, 106 S.W.3d 646, 649 (Tenn. 2003).

In this case, the trial court dismissed Count 4 at the conclusion of the first day of trial for failure of adequate proof of venue. The State does not appeal this ruling. At the beginning of the second day of trial, on August 15, 2009, the trial court ruled that, because it could not take judicial notice of the fact that the Brentwood gas stations were located in Williamson County, the State had failed to prove venue for Counts 1 and 2:

> [W]ith respect to the offenses allegedly occurring in Brentwood, Tennessee, because part of Brentwood is in Williamson County, part of Brentwood is in Davidson County, it's the Court's judgment that based upon the authorities that have been presented to the Court, that the Court simply cannot judicially notice the location of those offenses, and that the State has failed to prove venue with respect to those offenses.

Based on this ruling, the Defendant amended her motion to dismiss to include Count 3, which allegedly occurred at a Brentwood Great Clips, and Count 6, which allegedly occurred at the Carvers' Brentwood home. The trial court granted this motion, dismissing Counts 3 and 6, and it allowed the Defendant to enter proof on the only remaining charge, Count 5. At the close of proof, the trial court found that the State failed to prove beyond a reasonable doubt that the Defendant fraudulently used the Carvers' credit card at Smoothie King, as alleged in Count 5. In a written order dated August 15, 2009, but filed August 20, 2009, the trial court stated:

> [A]fter hearing a portion of the evidence in this case and testimony of witnesses, Counts 1, 2, 3 & 6 are dismissed.
> . . . [A]fter hearing all the evidence in the case and the arguments of Counsel, the Court proceeded to rule as follows: the Defendant, Ashlee Dobbs is "Not Guilty" as to Count 5.

On September 14, 2009, the State filed a timely notice of appeal of the "final judgment dismissing Counts 1, 2, 3, and 6 of the Indictment, entered in this action on the 15ᵗʰ day of August, 2009." On October 10, 2009, the trial court entered a series of judgments in this case. The judgments state that, following a bench trial, the trial court found the Defendant "Not Guilty" of Counts 1, 2, 3, 5, and 6 and that it "dismissed" Count 4.

We conclude that the trial court lost jurisdiction to enter additional orders in this case once the State filed its notice of appeal on September 14, 2009, of the trial court's dismissal

of Counts 1, 2, 3, and 6. *See Pendergrass*, 927 S.W.2d at 837. Thus, the trial court was without jurisdiction to enter the October 12, 2009, judgments of acquittal as to Counts 1, 2, 3, and 6. *Id*. These judgments, therefore, were of no legal effect. *See id*. Thus, contrary to the Defendant's arguments on appeal, the trial court's October 2009 judgments of acquittal do not bar re-prosecution of the conduct alleged in Counts 1, 2, 3, and 6.

Tennessee Rule of Appellate Procedure 3(c) provides that the State may appeal from an order entered by a trial court "the substantive effect of which results in dismissing an indictment, information, or complaint." The August 2009 dismissal of Counts 1, 2, 3, and 6 being the final acts by the trial court while it retained jurisdiction in this case, the State clearly has grounds for appeal in this case. Because Rule 3(c) provides a basis for the State's appeal, the State's appeal is not frivolous within the meaning of Tennessee Code Annotated section 27-1-122. Thus, the Defendant is not entitled to relief on this issue, and we will turn to address the issues raised by the State on their merits.

### B. Dismissal of Counts 1, 2, 3, and 6

The State contends the trial court improperly dismissed Counts 1, 2, 3, and 6 for lack of sufficient proof regarding venue. It argues that Mrs. Carver's testimony established by a preponderance of the evidence that the conduct alleged in Counts 1 and 2 occurred in Williamson County, Tennessee. As to Counts 3 and 6, the State argues that the trial court should have taken judicial notice of Brentwood's location within Williamson County based upon the Brentwood "Code of Ordinances" introduced at trial. The State argues that the trial court's erroneous dismissals of Counts 1, 2, 3, and 6 require this Court to reverse the trial court's order and reinstate the indictments. The State further contends that, even if this Court affirms the trial court's dismissal of Counts 1, 2, 3, and 6, it should not be barred from re-prosecuting the Defendant based upon Counts 1, 2, 3, and 6.

The Defendant responds that the trial court properly dismissed Counts 1, 2, 3, and 6 because the State failed to establish by a preponderance of the evidence that the conduct alleged in each count occurred in Williamson County. Citing *State v. Young*, she argues that, for purposes of establishing venue, a trial court may not take judicial notice of a city's being within a particular county where the city exists within two counties. 617 S.W.2d 661, 663 (Tenn. Crim. App. 1981). In further support of her position, the Defendant argues that, although a trier of fact under certain circumstances may take notice of a city's being within a particular county, it cannot take notice of the *locus in quo* of a crime being within a particular county.

Our Constitution provides that an accused must be tried in the county in which the crime was committed. Tenn. Const. art. I, § 9; see also Tenn. R. Crim. P. 18(a) ("Except as

otherwise provided by statue or by these rules, offenses shall be prosecuted in the county where the offense was committed."). "Proof of venue is necessary to establish the jurisdiction of the court, but it is not an element of any offense and need only be proved by a preponderance of the evidence." *State v. Young*, 196 S.W.3d 85, 101 (Tenn. 2006) (quoting *State v. Hutcherson*, 790 S.W.2d 532, 535 (Tenn. 1990) and citing T.C.A. § 39-11-201(e)). "Venue is a question for the jury and may be proven by circumstantial evidence." *Id*. at 101-02 (internal citations omitted). "Slight evidence" satisfies the State's burden if the evidence is uncontradicted. *State v. Bennett*, 549 S.W.2d 949, 951 (Tenn. 1977). In determining venue, the jury is entitled to draw reasonable inferences from the evidence. *Young*, 196 S.W.3d at 102. Because venue bears on procedure rather than the guilt or innocence of a defendant, the reversal of a defendant's conviction for want of proof of venue does not bar the State from retrying the defendant based on the alleged conduct. *Hutcherson*, 790 S.W.3d at 535.

Tennessee Rule of Evidence 201 allows courts to take judicial notice of "adjudicative fact" not subject to "reasonable dispute." Under the rule, a fact is not subject to "reasonable dispute" if it is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b). The rule provides that judicial notice is "mandatory" where a party requests judicial notice and supplies the "necessary information." Tenn. R. Evid. 201(d). Judicial notice is only "discretionary" where a party makes no such request. Tenn. R. Evid. 201(c).

Several appellate opinions have discussed the circumstances under which a court may take judicial notice of a geographical fact. These opinions have established that a court may take judicial notice of Tennessee counties and their relative locations and of a city's being within a particular county or counties. *Coover v. Davenport*, 48 Tenn. 368, 383 (Tenn. 1870) (relative locations of Tennessee counties); *Motors Ins. Corp. v. Lipford*, 250 S.W.2d 79, 80-81 (Tenn. 1952) (fact of a municipality being within a particular county); *Town of Mount Carmel v. City of Kingsport*, 397 S.W.2d 379, 381-82 (Tenn. 1965) (fact of a municipality being within several counties). A court may not, however, take judicial notice of the precise location of municipal boundaries or of whether a street is within a particular city or county. *Alexander v. Virginia & S.W. Ry*, 201 S.W.134, 135 (Tenn. 1918) (precise location of municipal boundaries); *Young*, 617 S.W.2d at 663 (citing *Kelly v. State*, 308 S.W.2d 415, 664-65 (1957)) (whether a street is within a particular city or county). As our Supreme Court explained in *Kelly*, "The location of a [crime] in a particular section of the city, the *locus in quo*, (necessary to establish venue), is not a 'geographical fact' of which the [trier of fact must] take notice." 308 S.W.2d at 664-65.

In this case, the trial court stated several times on the record its belief that Brentwood

extended from Williamson County into Davidson County. Based on this belief, the trial court found that the evidence that the crimes alleged in Counts 1, 2, 3, and 6 occurred "in Brentwood" was insufficient to establish that the crimes occurred in the Williamson County portion of Brentwood. It declined to take judicial notice that Brentwood is entirely within Williamson County based on the Brentwood Code of Ordinances.

On appeal, we are tasked with determining whether the State introduced sufficient evidence that the crimes alleged in Counts 1, 2, 3, and 6 occurred in Williamson County and, if not, whether the trial court erred when it refused to take judicial notice of both Brentwood's being within Williamson County and the Defendant's alleged conduct happening within Williamson County. Before we address the evidence supporting venue with respect to each of the challenged counts, we will first discuss the evidence necessary to establish venue where, as here, a city or county's boundaries are not universally understood.

## 1. Refusal to Take Judicial Notice of Brentwood's being within Williamson County

As discussed above, courts generally should not take judicial notice of the more specific details of a city's boundaries, especially as they relate to whether the city lies within a particular county. The reason for this limitation is that such details are frequently neither "generally known" in the territorial jurisdiction of the court nor "capable of accurate and ready determination" by resort to an authoritative source.

In this case, defense counsel and the State disagreed on the precise location of Brentwood's city limits, and the trial judge expressed multiple times his belief that portions of Brentwood extended into Davidson County. The confusion among the trial participants about Brentwood's city limits likely reflects a similar confusion in the public at large.[2] That is, because the participants at trial disagreed on whether Brentwood lay entirely within Williamson County, Brentwood's city limits cannot be said to have been "generally known" within the territorial jurisdiction of the trial court. Thus, we conclude that Rule 201(b)(1) did not compel the trial court to take judicial notice of Brentwood's being entirely within Williamson County.

The lack of a general knowledge of Brentwood's city limits being apparent from the record, the sole remaining basis for judicial notice could only be Rule 201(b)(2), which allows for judicial notice of a fact "capable of accurate and ready determination by resort to

_____

[2]We note that the actual city limits of Brentwood are of no consequence to our analysis on appeal. We are tasked only with examining whether the documentation introduced by the State at trial was adequate to compel the trial court under Tennessee Rule of Evidence 201(d) to take judicial notice of Brentwood's being within Williamson County.

sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b)(2). Such judicial notice would only have been mandatory if the State offered "adequate documentation" of the fact. Tenn. R. Evid. 201(d). In this case, the State introduced only a copy of the Code of Ordinances of the city of Brentwood in support of its request that the trial court take judicial notice of Brentwood's being within Williamson County. Though the Code of Ordinances references Brentwood as being within Williamson County several times, it at no point describes the city limits of Brentwood or states that Brentwood is wholly contained within Williamson County. Given the aforementioned general confusion among the general public about the actual city limits of Brentwood, we conclude this Code was not "adequate documentation" with which the trial court could readily "resort to" and accurately determine that Brentwood was entirely contained within Williamson County. Therefore, the trial court did not err when it declined to take judicial notice of Brentwood's being within Williamson County.

As to the more specific fact of the location of the crimes alleged in Counts 1, 2, 3, and 6 being within Williamson County, the law is clear that a trial court may not take judicial notice of either a municipality's territorial boundaries or the point at which a particular road crosses into a new county. *See Alexander*, 201 S.W. at 135; *Young*, 617 S.W.2d at 663. Also, where a municipality is actually located or is believed to be located within two counties, a trial court may not, by simple virtue of an event's happening within the municipality, take judicial notice that the event occurred within either of the counties into which the municipality extends. *Young*, 617 S.W.2d at 663. Instead, the record must contain additional evidence that the event occurred within the portion of the city located within the county in which venue is asserted. *Id.* Thus, the trial court in this case could not have properly taken judicial notice that the streets on which the crimes alleged in Counts 1, 2, 3, and 6 occurred were located within Williamson County without additional evidence establishing their relation to the Williamson County boundaries. The State is not entitled to relief on this issue.

### 2. Evidence of Venue for Each Count

Having concluded that the trial court in this case did not err in refusing to take judicial notice of either Brentwood's being contained within Williamson County or the specific streets on which the Defendant's alleged crimes were committed being within Williamson County, we turn to address whether the record contained sufficient independent evidence of venue for each of the counts whose dismissal is challenged on appeal.

### a. Counts 1 and 2

Count 1 of the indictment against the Defendant charged that the Defendant

-13-

fraudulently used the Carvers' credit card at Mapco in Brentwood, Tennessee, on or about August 7, 2008. Count 2 of the indictment charged that the Defendant fraudulently used the Carvers' credit card at Shell in Brentwood, Tennessee, on or about August 13, 2008. At trial, Mrs. Carver, who was asked to identify which of the Defendant's alleged actions took place in Williamson County, testified that "[t]he two that are in Williamson County were Mapco on 8/7, and a Shell station on 8/13 that took place in Williamson County. There were others outside of this county." No evidence was introduced to refute Mrs. Carver's statement that the Mapco and Shell stations were located in Williamson County.

At the close of the State's proof, the trial court explained that, because it could not take judicial notice of Brentwood's being within Williamson County, the fact of the Mapco and Shell stations' being located in Brentwood was insufficient to establish that the stations were located within Williamson County. Based on this finding, the trial court dismissed Counts 1 and 2.

We conclude that the evidence preponderates against the trial court's findings. The State's burden of proving venue is low. Rather than requiring evidence "beyond a reasonable doubt" to establish venue, the State must simply prove by a "preponderance" of the evidence that venue is proper. No evidence was introduced to refute Mrs. Carver's testimony that the Mapco and Shell stations were located within Williamson County. The trial court did not indicate that Mrs. Carver's testimony, that the Mapco and Shell gas stations were located in Williamson County, was not credible. The evidence preponderates against the trial court's finding that the State failed to establish that the gas stations were within Williamson County. As such, the trial court erred in dismissing Counts 1 and 2, and we remand with instructions that Counts 1 and 2 be reinstated against the Defendant.

**b. Count 3**

Count 3 of the indictment against the Defendant charged the Defendant with fraudulently using the Carvers' credit card at Great Clips in Brentwood, Tennessee, on or about August 25, 2008. At trial, no witness testified about the location of Great Clips other than to describe it as located in Brentwood, Tennessee. At the close of the State's proof, the trial court again explained that, because it could not take judicial notice of Brentwood's being within Williamson County alone, it could not find that the Defendant's alleged criminal conduct at the Brentwood Great Clips occurred in Williamson County.

We conclude that the trial court's ruling as to Count 3 was proper. As described above, the evidence introduced to prove venue need only be "slight" and may be either "circumstantial or direct." *Bennett*, 549 S.W.2d at 951; *Young*, 196 S.W.3d at 101. In this case, however, the State introduced no evidence that Great Clips was located in Williamson

-14-

County. As earlier discussed in this opinion, the trial court properly declined to take judicial notice of Brentwood's being within Williamson County. Therefore, the record being devoid of further evidence that the Brentwood Great Clips was located within Williamson County, the record does not preponderate against the trial court's finding that the State failed to establish that the alleged conduct was committed within Williamson County. As such, we affirm the trial court's dismissal of Count 3 for the State's failure to prove venue.

### c. Count 6

Count 6 of the indictment against the Defendant charged the Defendant with theft of property valued at more than $500 from the Carvers' home between June 1, 2008, and September 1, 2008. At trial, Mrs. Carver testified that her family's home was "in Brentwood off Moore's Lane in Montpier subdivision." Additionally, Mrs. Carver testified that the Brentwood Police Department responded to her call about the Defendant's conduct, that her children attended school in Williamson County, and that the two YMCAs the family attended were both located in Williamson County. At the close of the State's proof, the trial court found that the evidence linking the Carver family to various Williamson County organizations was insufficient, even as circumstantial evidence, to establish that their home was within Williamson County. It explained that, because no witness testified that the Carver home or the Montpier subdivision was located within Williamson County, the record was insufficient to establish that the Defendant's alleged theft of property from the Carver home occurred in Williamson County.

We conclude that the trial court's ruling as to Count 6 was also proper. Though circumstantial evidence alone may establish venue, we agree with the trial court that the evidence connecting the Carver family to Williamson County was insufficient to establish by a preponderance of the evidence that the family's home was located within Williamson County. As discussed above, the trial court properly refused to take judicial notice that Brentwood is within Williamson County. Further, because a trial court may not take judicial notice that a specific portion of a street is within a particular county, the trial court could not have judicially noticed that the Carvers' home was within Williamson County simply by virtue of its address. Therefore, the evidence was insufficient to establish by a preponderance of the evidence that the Carvers' home was located within Williamson County. As such, we affirm the trial court's dismissal of Count 6 for the State's failure to prove venue.

### III. Conclusion

After a thorough review of the record and authorities, we conclude that the trial court erred when it dismissed Counts 1 and 2 for failure of proof of venue but properly dismissed

Counts 3 and 6 for failure of proof of venue.  As such, we affirm in part and reverse in part the trial court's order with instructions that Counts 1 and 2 be reinstated and that Counts 3 and 6 be dismissed without prejudice.  Further, as we are granting relief to the State as to Counts 1 and 2, it is not our view that any aspect of the State's appeal is frivolous.  We remand for further proceedings consistent with this opinion.

_____

ROBERT W. WEDEMEYER, JUDGE