# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 3, 2004 Session

## MICHELLE SULLIVAN, by and through her Conservator, Brenda Hightower v. EDWARDS OIL COMPANY

**Appeal from the Circuit Court for Maury County**
**No. 9395     Stella Hargrove, Judge**

---

**No. M2003-01560-SC-R3-CV - Filed August 19, 2004**

---

We granted this appeal to define "nursing services" as used in Tennessee Code Annotated section 50-6-204(a)(1) and to determine whether the caretaking services that an injured employee's mother provides are nursing services for which the Workers' Compensation Law mandates the employer compensate her. The trial court found that the mother had failed to carry her burden of proof on the issue of whether she was entitled to compensation. The trial court concluded that the plain meaning of Tennessee Code Annotated section 50-6-204 contemplates only professional nursing services ordered by the attending physician, and that the mother is not a professional nurse providing professional nursing services. The employee appealed, arguing that the statute provides compensation for a broader range of caretaking services. The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tennessee Code Annotated section 50-6-225(e)(3), but the appeal was transferred to the full Supreme Court prior to the Panel issuing its decision, and oral argument was heard by the full Court. We hold that in Tennessee Code Annotated section 50-6-204(a)(1), "nursing services" refers to the services of a professional nurse. Because the mother providing caretaking services here is not a professional nurse, the Workers' Compensation Law does not require the employer to compensate the mother for her services. Therefore, we affirm the circuit court's denial of compensation for her services. The question of whether the Workers' Compensation Law should provide compensation when a family member provides care for an injured worker is an issue that must be addressed by the Legislature.

**Tenn. Code Ann. § 50-6-225(e)(3); Judgment of the Trial Court Affirmed**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Patrick A. Flynn, Columbia, Tennessee, for the appellant, Michelle Sullivan.

David T. Hooper, Brentwood, Tennessee, for the appellee, Edwards Oil Company.

**OPINION**

**Factual and Procedural Background**

Michelle Sullivan was employed by Edwards Oil Company ("Edwards Oil") at a Quick Mart in Columbia, Tennessee. Tragically, on February 1, 2000, she was shot in the face as the Quick Mart was robbed. As a result, Sullivan suffered a severe, traumatic brain injury. Sullivan lives with her mother and grandmother, and her mother, Brenda Hightower, serves as her court-appointed conservator and primary caregiver. She is incapable of working or being rehabilitated.

Sullivan filed a complaint against Edwards Oil in the Maury County Circuit Court, seeking workers' compensation benefits. The trial court's agreed order of May 28, 2003 reflects that the parties stipulated that Sullivan suffered a compensable injury, that her compensation rate is $173.42 per week, that she is entitled to permanent total disability benefits, that she is entitled to travel reimbursement totaling $728.00, and that Edwards Oil will continue to pay her reasonable and necessary medical expenses according to the Workers' Compensation Law. However, the parties disagreed as to whether Hightower is entitled to compensation for Hightower's present and future care of Sullivan as a part of those reasonable and necessary medical expenses.

Dr. Thomas Edward Groomes, Sullivan's treating physician, is a physiatrist (a doctor that deals with the treatment, prevention, and diagnosis of disease by essentially physical means, including manipulation and exercise) and a specialist in rehabilitation medicine. He testified that although Sullivan can dress and bathe herself and can prepare simple sandwiches or eat items from the refrigerator, she needs supervision to insure that she is eating properly and taking her medications correctly. Dr. Groomes further stated that Sullivan should not be left alone for more than fifteen to thirty minutes at a time but that any competent adult, with no special training, could supervise her. Supervision is required to ensure that Sullivan does not do anything to harm herself as a result of her loss of memory and judgment, such as allowing strangers into the house or leaving appliances turned on and causing a fire. Dr. Groomes did not order any professional nursing or home care for Sullivan. However, over defense counsel's objections, Dr. Groomes submitted a written order as a late-filed exhibit. The document read, "Due to a traumatic brain injury it is necessary for Michelle Sullivan to have twenty-four hour supervision."

The trial court denied compensation to Hightower, ruling that she had failed to carry her burden of proof on the issue of whether she was entitled to compensation. The trial court concluded that the plain meaning of Tennessee Code Annotated section 50-6-204 only requires an employer to pay for professional nursing services ordered by the attending physician, and that Hightower is not entitled to compensation because she is not a professional nurse. The trial court emphasized that this issue may be revisited if Sullivan requires professional nursing services in the future. Sullivan

-2-

appealed the trial court's denial of compensation to the Special Workers' Compensation Appeals Panel, which heard oral argument. The appeal was then transferred to the full Supreme Court prior to the Panel issuing its decision.

## Analysis

The Workers' Compensation Law requires an employer to furnish medical treatment to an employee who has suffered a compensable injury. Specifically, Tennessee Code Annotated section 50-6-204(a)(1) (Supp. 2003) states:

> The employer or the employer's agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, including prescription eyeglasses and eyewear, **such nursing services** or psychological services **as ordered by the attending physician** and hospitalization including such dental work made reasonably necessary by accident as herein defined, as may be reasonably required . . . .

(Emphasis added.)

The parties in this case have asked us to define "nursing services" and to determine whether the caretaking services that Hightower provides her daughter are nursing services for which the statute requires Edwards Oil to compensate her. This is an issue of statutory interpretation. Statutory interpretation is a question of law, which we review de novo, with no presumption of correctness given to the courts below. Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003). This Court's role in statutory interpretation is to ascertain and effectuate the Legislature's intent. Kite v. Kite, 22 S.W.3d 803, 805 (Tenn. 1997); State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). When a statute's language is unambiguous, the legislative intent shall be derived from the plain and ordinary meaning of the statutory language. Carson Creek Vacation Resorts v. Dep't. of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993). If, however, a statute's language is ambiguous and the parties legitimately derive different interpretations, we must look at the entire statutory scheme to ascertain the legislative intent. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).

Sullivan has cited many cases from other states, where courts have reached the conclusion that a nonprofessional caretaker, in many cases even a family member, is entitled to compensation under the workers' compensation laws of those states.[1] Edwards Oil responds by pointing to an unreported case, Hughes v. Jones, in which this Court stated:

---

[1] Dresser Minerals v. Hunt, 556 S.W.2d 138 (Ark. 1977); Sisk v. Philpot, 423 S.W.2d 871 (Ark. 1968); Oolite Rock Co. v. Deese, 134 So. 2d 241 (Fla. 1961); Interchange Village v. Clark, 363 S.E.2d 350 (Ga. Ct. App. 1987); Bevins Coal Co. v. Ramey, 947 S.W.2d 55 (Ky. 1997); A. G. Crunkleton Elec. Co. v. Barkdoll, 177 A.2d 252 (Md. 1962); Kushay v. Sexton Dairy Co., 228 N.W.2d 205 (Mich. 1975); Bushnell v. City of Duluth, 62 N.W.2d 813 (Minn. 1954); Currier v. Roman L. Hruska U.S. Meat Animal Research Ctr., 421 N.W.2d 25 (Neb. 1988); Wilson Paving Inc. v. Abernathy, 76 P.3d 103 (Okla. Ct. App. 2003)

The plaintiff contends that he is entitled to compensation for the nursing services that his wife rendered after he was released from the hospital . . . The trial court found that T.C.A. § 50-6-204 contemplates professional nursing services as ordered by the attending physician, and that the plaintiff had not established that the services rendered were ordered by the attending physician. We agree with the finding of the trial court on this issue and this issue presented by the plaintiff is overruled.

1990 WL 77178, at *3 (Tenn. June 11, 1990).

However, the cases presented are not dispositive of this issue of statutory construction. As stated above, when a statute's meaning is plain and unambiguous, we look only to the language of the statute. In this instance, the meaning of "nursing services" is clear. Nursing services are those services provided by a professional nurse in the care of a patient. Indeed, the dictionary definition of nursing is "[t]he profession of a nurse. The tasks or care of a nurse." American Heritage College Dictionary 938 (3d ed. 2000). In the context of this statute, which lists medical treatment and equipment that employers must provide to injured employees, we must presume that the Legislature intended "nursing services" to mean the services of a person whom the medical profession recognizes as a nurse. See Henry v. Iowa-Illinois Gas & Elec. Co., 522 N.W.2d 301, 303 (Iowa 1994).

Because we now hold that "nursing services" refers to the services of a professional nurse, we must affirm the circuit court's denial of compensation to Hightower. Hightower is not a professional nurse. Therefore, her request for payment must fail because the Workers' Compensation Law provides no authority for holding Edwards Oil liable for her services.

We wish to stress that we are sympathetic to the position in which Hightower and Sullivan find themselves. Hightower's willingness to provide care and supervision to her disabled adult daughter is commendable. We have no doubt that providing this care and supervision has constrained Hightower's daily life in many ways. Surely there are many people in Tennessee whose lives are forever changed when they take on the responsibility of caring for an ill or disabled family member or friend. In many instances, such responsibility may even require that friend or family member to forego employment and make economic sacrifices. We do not underestimate the significant obligation Hightower has undertaken. In addition, we note that in many cases home care can be provided at a much lower cost than institutional care. It is possible that compensating a family member caretaker for his or her services could be less expensive for an employer than institutional care that might otherwise be required.

The hardship to family members who choose to provide daily care to an injured employee and the economic effect of compensating those family members are issues that the Legislature should consider when reviewing the provisions of the Workers' Compensation Law. However, it is not the role of this Court to broadly expand employers' liability under the Law by inserting a new category

of compensable services. It is a well-established rule that "it is not for the courts to alter or amend a statute." Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000), see also Town of Mount Carmel v. City of Kingsport, 397 S.W.2d 379, 382 (Tenn. 1965). Furthermore, a court must not question the "reasonableness of [a] statute or susbstitut[e] [its] own policy judgments for those of the legislature." Gleaves, 15 S.W.2d at 803 (quoting BellSouth Telecomms., Inc.v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). The Legislature is better suited to consider the costs and benefits of such compensation and to define its parameters.[2]

### Conclusion

The caretaking services Hightower provides for her daughter are not compensable "nursing services" under the Workers' Compensation Law. Tennessee Code Annotated section 50-6-204(a)(1) provides compensation for professional nursing services that are ordered by the employee's attending physician. We now hold that "nursing services" in this statute refer to the services of a professional nurse in the care of a patient. Because Hightower is not a professional nurse, we affirm the decision of the circuit court to deny her compensation. The costs of this appeal are assessed against the appellant, Michelle Sullivan, and her surety, for which execution shall issue if necessary.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE

---

[2]The Georgia Court of Appeals was faced with a similar situation of an injured worker and non-medical family caretaker in Insurance Co. of North America v. Money, 262 S.E.2d 240 (Ga. Ct. App. 1979). That court held that the Georgia workers' compensation laws did not authorize compensation for the caretaker. "It is unfortunate that the daughter can not be compensated for her efforts, however, that is a legislative and not a judicial matter." Id. at 241. After the result in that case, the Georgia legislature amended the statutes to provide for compensation in such instances. Interchange Village v. Clark, 363 S.E.2d 350, 352 (Ga. Ct. App. 1987).