# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 20, 2011 Session

## IN RE: CONSERVATORSHIP OF JOHN DANIEL TATE

**Appeal from the Circuit Court for Davidson County**
**No. 07P-1654     David Randall Kennedy, Judge**

**No. M2010-01904-COA-R3-CV - Filed December 29, 2011**

This is the second appeal arising from a disputed "temporary" conservatorship. Three issues are presented: whether the evidence clearly and convincingly established that the respondent was a disabled person in need of the protection and supervision of the court; which party is responsible for the costs of the proceedings under Tennessee Code Annotated § 34-1-114(a); and which party is responsible for discretionary costs under Tennessee Rule of Civil Procedure 54.04(2). The petitioner was appointed "Temporary Conservator" and served in this fiduciary capacity for thirty-one months until June of 2010, at which time the trial court terminated the conservatorship upon the finding that the respondent was no longer a "disabled person" as that term is defined in Tennessee Code Annotated § 34-1-101(7). Over the objection of the ward, the trial court assessed the costs of the conservatorship against the respondent pursuant to Tennessee Code Annotated § 34-1-114(a) because a "fiduciary" was appointed, and discretionary costs pursuant to Tennessee Rule of Civil Procedure 54.04(2) upon the finding that the petitioner was the "prevailing party." The respondent contends this was error because the conservator was merely appointed the "temporary conservator" and the petition to create the conservatorship was ultimately dismissed. We find the evidence presented to the trial court on November 14, 2007, clearly and convincingly established that the respondent was a disabled person in need of a conservator of his person and property; we find no error with the trial court's conclusion that the petitioner was entitled to recover the costs of the proceedings pursuant to Tennessee Code Annotated § 34-1-114(a) because a conservator was appointed; and we find the trial court did not abuse its discretion in assessing discretionary costs against the respondent under Tennessee Rule of Civil Procedure 54.04(2). Thus, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. PATRICIA J. COTTRELL, P.J., M.S., not participating.

Michael G. Hoskins, Nashville, Tennessee, for the appellant, John D. Tate.

Paul T. Housch, for the appellee, David E. Tate.

## OPINION

This conservatorship proceeding was commenced on October 19, 2007, when David E. Tate ("Petitioner"), filed a petition for conservatorship of his brother, John Daniel Tate ("Respondent"). In the petition it was alleged that Respondent had a life threatening disability due to substance abuse. Following a formal hearing on November 14, 2007, during which a psychiatrist testified as to the need for a conservatorship, the petition was granted and Petitioner was appointed "temporary conservator" of the person and property of Respondent. Petitioner served as Respondent's conservator for thirty-one months until June of 2010, following another evidentiary hearing, when the trial court found that Respondent was "no longer a 'disabled person' as defined under T.C.A. § 34-1-101(7)" and the conservatorship was terminated.

In the interim, however, there were numerous hearings, many of which pertained to Respondent's insistence that the conservatorship was not needed, that the petition for conservatorship should be dismissed, and that his rights should be restored to him. During the ensuing months, a psychiatric evaluation was conducted and Respondent received treatment; all the while Respondent continued his efforts to dismiss the petition.[1] After several review hearings, the trial court entered a Scheduling Order and set a "final hearing" for May 24, 2010. In the order, the trial court stated that it had already heard "clear and convincing evidence for the establishment of a Temporary Conservatorship," and that, "at the Final Hearing, the remaining issue shall be whether the Temporary Conservatorship in this cause should be made permanent, or in the alternative, modified or terminated based on the evidence."

Following the May 24, 2010 hearing, the trial court found that Respondent "now has the capacity to manage his own affairs," and "is no longer a 'disabled person' as defined under T.C.A. § 34-1-101(7)." Therefore, pursuant to Tennessee Code Annotated § 34-3-108(e), the trial court issued its Final Order terminating the temporary conservatorship

---

[1]During the pendency of the conservatorship proceedings, this Court granted a Tennessee Rule of Appellate Procedure 10 application for an interlocutory appeal. Following a hearing we remanded the case for "entry of a final judgment on the Petition for Appointment of Conservator from which the appellant will be entitled to file an appeal as of right." *In re Tate*, No. M2009-02174-COA-R10-CV, 2009 WL 4841036, at *4 (Tenn. Ct. App. Dec. 15, 2009).

on June 7, 2010. The conservator was given 60 days to wind down the conservatorship.[2] That order originally stated that the conservatorship was terminated in accordance with Tennessee Code Annotated § 34-3-108(d); however, both parties filed motions to change the basis for the termination. The Petitioner sought to add Tennessee Code Annotated § 34-3-108(e). Respondent countered asserting that Tennessee Code Annotated § 34-3-108(d) & (e) were applicable only in cases where a petition to terminate the conservatorship was filed, which had not been done, and which Respondent asserted was not necessary because a *permanent* conservatorship was never granted. In an order issued August 9, 2010, the trial court held that the statutory provisions would be removed from the order, stating, "T.C.A. § 34-3-108(d) and (e) are not applicable to the court's ruling to terminate the Temporary Conservatorship in this cause."

Each party then filed motions seeking to have the costs of the conservatorship proceedings and attorney fees charged against the other party under Tennessee Code Annotated § 34-1-114(a) and discretionary costs pursuant to Tennessee Rule of Civil Procedure 54.04.[3] Petitioner asserted that because he was appointed conservator and faithfully served in that capacity, he was entitled to recover the costs of the conservatorship proceedings, including attorney's fees, pursuant to Tennessee Code Annotated § 34-1-114(a). Petitioner further asserted that, as the prevailing party, he was entitled to recover his discretionary costs under Tennessee Rule of Civil Procedure 54.04 from Respondent.

Respondent countered insisting that the costs of the proceedings and attorney's fees could only be taxed upon the entry of a final judgment, and the appointment of a temporary conservator was merely part of a series of interlocutory orders, not a final judgment. The final judgment, Respondent argued, was the dismissal of the petition, which in turn also dismissed the prior interlocutory orders appointing a temporary conservatorship, meaning that no "fiduciary" had ever been appointed. Respondent also asserted that he was the

---

[2]When the court determines that a conservator is "no longer needed" and issues an order terminating the conservatorship, the conservatorship shall terminate. Tenn. Code Ann. § 34-3-108(e). Upon the entry of the order terminating the conservatorship, the conservator has one hundred twenty days to file a preliminary final accounting with the court, "which shall account for all assets, receipts and disbursements from the date of the last accounting until the date the conservatorship terminates, and shall detail the amount of the final distribution to close the conservatorship." *Id.* If no objections are filed to the preliminary final accounting within thirty days, the conservator shall distribute the remaining assets. *Id.* Once the evidence of the final distribution is filed, on order of the court, the conservatorship proceeding shall be closed. *Id.*

[3]Tennessee Code Annotated § 34-1-114(a) provides that in conservatorship cases, "if a fiduciary is appointed, the costs of the proceedings shall be charged against the property of the respondent. . . . If no fiduciary is appointed, the costs of the proceedings shall be charged against the petitioner."

-3-

prevailing party and, therefore, he was entitled to recover his discretionary costs under Tennessee Rule of Civil Procedure 54.04.

In three separate orders issued June 18, 2010, the trial court held that, as a Temporary Conservator, Petitioner was acting as a fiduciary for Respondent and was the "prevailing party;" thus, pursuant to Tennessee Code Annotated § 34-1-114(a) and Tennessee Rule of Civil Procedure 54.04(2), Respondent was required to pay Petitioner's reasonable attorney fees and expenses and the costs of the court-ordered medical evaluations, court reporters, transcripts, and court costs. In another order, the court held that Petitioner was authorized to sell certain assets of Respondent to cover these expenses and to collect royalties paid to Respondent. This appeal followed.

## ISSUES

Respondent challenges three aspects of the trial court's decisions. First, he asserts that the trial court erred in concluding that on November 14, 2007, the evidence was clear and convincing that he was disabled and in need of the protection and supervision of the court.[4] Second, he asserts that the trial court erred in denying his motion to charge the costs of the proceeding to Petitioner. Third, he asserts the court erred in finding that Petitioner was the "prevailing party," and upon this finding erroneously denied his motion and granted Petitioner's motion for discretionary costs.

## STANDARD OF REVIEW

"Because of the value our society places on individual autonomy and self-determination, persons seeking the appointment of a conservator must prove by clear and convincing evidence that the person for whom a conservator is sought is a 'disabled person.'" *In re Conservatorship of Groves*, 109 S.W.3d 317, 330 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 34-1-126). Pursuant to this evidentiary standard, the courts must draw "a distinction between specific facts and the combined weight of these facts," and determine whether the combined weight of the facts establishes clearly and convincingly that a

---

[4]In his brief, Respondent listed this issue as his third issue in the alternative to the other two issues. We found it appropriate to address this issue first.

conservatorship was warranted.[5] *In re Conservatorship of Trout*, No. W2008-01530-COA-R3-CV, 2009 WL 3321337, at *11 (Tenn. Ct. App. Oct. 15, 2009) (quoting *In re Audrey S.*, 182 S.W.3d 838, 861 n.26 (Tenn. Ct. App. 2005)).

A trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *see also* Tenn. R. App. P. 13(d) (2008). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). When the resolution of an issue depends upon the credibility of witnesses, "[t]he weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002).

To the extent there are issues of statutory interpretation, which are questions of law, we review a trial court's conclusions of law under a de novo standard upon the record with no presumption of correctness. *In re Conservatorship of Trout*, 2009 WL 3321337, at *11 (citing *Sullivan v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004)).

**ANALYSIS**

The threshold question in a conservatorship proceeding is whether the respondent for whom a conservator is sought is a disabled person as that term is defined in Tennessee Code Annotated § 34-1-101(7). *See Groves*, 109 S.W.3d at 330. If the court determines the respondent is not a disabled person, the trial court cannot appoint a conservator. *Id*. If, the respondent is found to be a disabled person, even temporarily or partially, the court must determine:

> [W]hether the person is fully or partially incapacitated and whether the incapacity is *temporary or permanent*. The trial court must also determine, based on the nature of the incapacity, whether the disabled person requires full-time supervision, protection, or assistance or whether partial supervision, protection, or assistance will suffice. If the trial court determines that the disabled person requires any sort of supervision, protection or assistance, it

---

[5]Clear and convincing evidence "eliminates all serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence" and "produce[s] in the fact-finder's mind a firm belief or conviction regarding the truth of the factual propositions sought to be established by the evidence." *Groves*, 109 S.W.3d at 330.

must enter an order appointing a conservator and must specifically "[e]numerate the powers removed from the respondent and vested in the conservator." Tenn. Code Ann. § 34-3-107(2). Any power not specifically vested in the conservator remains with the person for whom the conservator has been appointed.

. . . .

Tennessee's conservatorship statutes do not define the concept of incapacity and do not identify any particular illnesses or conditions deemed to be disabling or incapacitating. The definition of "disabled person" alludes in the most general terms to "mental illness, physical illness, developmental disability *or other mental or physical incapacity*." Thus, while identification of the disabling illness, injury, or condition is an important part of a conservatorship proceeding, *the pivotal inquiry involves not merely the diagnosis but also the effect that the illness, injury, or condition has had on the capacity of the person for whom a conservator is sought.*

*Groves*, 109 S.W.3d at 331 (footnotes omitted) (emphasis added).

By statutory definition, a "disabled person" is any person eighteen years of age or older "determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability or other mental or physical incapacity." Tenn. Code Ann. § 34-1-101(7). A "conservator" is "a person or persons appointed by the court to provide partial or full supervision, protection and assistance of the person or property, or both, of a disabled person." Tenn. Code Ann. § 34-1-101(4).

I.

SUFFICIENCY OF THE EVIDENCE TO ESTABLISH DISABILITY

Tennessee Code Annotated § 34-1-126 provides that "[t]he court must find by *clear and convincing evidence that the respondent is fully or partially disabled and that the respondent is in need of assistance from the court* before a fiduciary can be appointed." (emphasis added). Respondent contends that the trial court erred in concluding on *November 14, 2007*, the evidence clearly and convincingly established that he was a disabled person in need of the protection, assistance, and supervision of the trial court.

Prior to the hearing on November 14, 2007, Petitioner filed with the court, pursuant to Tennessee Code Annotated § 34-3-105(a), the Report of Physician[6] of Board Certified Psychiatrist William D. Kenner, M.D. In that report, Dr. Kenner stated under oath that he made a personal physical and mental examination of Respondent on November 8, 2007, and on a scale between Excellent, Good, Fair, Poor, Chronic, and Not Applicable, Dr. Kenner determined that Respondent's "mental condition" was poor, his "physical condition" was poor, his "social condition" was poor, his "adaptive behavior" was poor, and the impact of current living condition on his disability was poor. Further, Dr. Kenner stated that Respondent was in need of a conservator to act on his behalf as a fiduciary for, *inter alia*, his medical treatment, his physical well being, and his financial affairs.

Petitioner also filed with the court prior to the November 14, 2007 hearing a lengthy and detailed narrative psychiatric report that Dr. Kenner provided, which set forth specific statements of the reasons for the recommendation of conservatorship. *See* Tenn. Code Ann. § 34-3-105(c) (stating that the physician shall state "an opinion as to whether a conservator is needed and the type and scope of the conservator *with specific statement of the reasons for the recommendation of conservatorship*."). Pertinent portions of Dr. Kenner's narrative psychiatric report of his meeting with Respondent, which took place at Respondent's home on November 8, 2007, are as follows:

> When I interviewed [Respondent], he crafted his answers so as not to reveal the extent and nature of his addiction. As a result, I have focused my findings more on what I could observe myself rather than specifically what [Respondent] said. Instead of using the standard form of a psychiatric report that relies heavily on an individual's history and present illness, I have provided a narrative of my time with [Respondent] in hopes that such would better inform the Court of [Respondent's] mental state and physical condition.
>
> I arrived at [Respondent's] home at 5909 Old Harding Pike at approximately 11:30 AM on November 8, 2007. I knocked and rang his

---

[6] Tennessee Code Annotated § 34-3-105(a) directs that *if* the respondent has been examined by a physician or a psychologist not more than ninety days prior to the filing of the petition, the report of the examination shall be submitted with the petition. In this case, the examination was conducted on November 8, 2007, shortly after the petition was filed, and the report was filed with the court prior to the hearing on November 14, 2007. The statute also provides that the physician's sworn report shall contain the following: "(1) The respondent's medical history; (2) A description of the nature and type of the respondent's disability; (3) An opinion as to whether a conservator is needed and the type and scope of the conservator with specific statement of the reasons for the recommendation of conservatorship; and (4) Any other matters as the court deems necessary or advisable." Tenn. Code Ann. § 34-3-105(c).

doorbell for several minutes, before [Respondent] opened his door for my house call. He greeted me wrapped in a comforter, and I explained who I was and the purpose of my visit. None-the-less, he asked several times, who I was, and then he explained that he usually slept during the day and stayed awake at night.

For a fourth time, I explained the purpose of my visit and that his interview would not be confidential in the same way it would be if he were in treatment with me. [Respondent] struggled with the question of whose side I was on. I stated that I had no side other than to evaluate him to determine whether he was competent to manage his affairs and make health care and other decisions.

. . .

After a few minutes, [Respondent] appeared from his bedroom. He had on a dirty sweat shirt and stained jeans that were several sizes too large for him. He tried to cinch them up with his belt, but they still slipped down across his hips to show that he had not found his underwear. [Respondent's] personal hygiene suggested that he had neither shaved nor bathed in weeks or perhaps months. His toenails were curved and about three-quarters-of-an-inch-long, and his fingernails were about half that length. His hands were dirty, and dirt formed thick, black crescents under each nail. [Respondent's] breath and body odor added to the aroma from the living room and kitchen to make the air in his home almost too thick to breathe.

. . .

*While [Respondent] proved cagey about the type and extent of his drug use, he admitted its affects*. He said that he had lost "about twenty-five pound, maybe more," since he had not weighed himself in months. Judging from the space in his pants and the extra length of his belt he used to hold them up, [Respondent] has gone down at least six inches in girth during his crack binge. *He said that six months ago, when he tried to stop, with a two-day stay at Cumberland Height, he had become severely depressed. He spoke of visual hallucinations, seeing a person, that may have been his tenant who occupies an apartment at his house, but he was not sure.* He explained that he gave the fellow free rent in exchange for cleaning his house and mowing his yard, but [Respondent] complained that he was missing money and other unspecified valuables around his house.

. . .

*Even though he did not admit it directly, [Respondent] clearly has become dependent upon crack cocaine. The extent of his addiction and use has impaired his health and his ability to care for himself even in the most basic ways. While he said he wanted to, he showed no sign of stopping his binge. Unlike many in similar circumstances, [Respondent] can probably afford to continue using crack until his body gives out rather than his money. He has withdrawn into an existence that resembles a homeless person* except that he has a roof over his head, but his house's walls and roof only keep his neighbors from seeing his squalid circumstances. He could just as easily live in a garbage-strewn alley as in his house on Old Harding Pike.

. . .

In my opinion, [Respondent] has lost any ability to rehabilitate himself by pulling on his own bootstraps. When scientists wanted to understand the addictive qualities of various drugs, they hooked rats up with IVs that allowed them to test the rats' responses to the compounds. On narcotics, the rats would press the bar and get up to a plateau dose. With that amount on board, they would lead rather normal rat lives. They would eat, sleep and reproduce. If cocaine were injected as a reward for pressing the bar, the rats simply stayed at the bar pressing it day and night. They ignored food and female rats in heat. If pressing the bar for cocaine were accompanied by an electrical shock, the cocaine addicted rats continued to press the bar. Death was the only thing that ended their addictions.

*At this point, [Respondent's] dependency is so profound that he should be detoxified in an inpatient hospital setting rather than in a drug rehabilitation setting. Crack cocaine depletes the body's normal store of neurotransmitters, and withdrawal from the stimulant leaves the addict's brain a wasteland. Major depression with a high risk of suicide often occurs with patients who have used as much as [Respondent] has.* For individuals in such advanced stages of addiction, I usually recommend an out of state hospital, since a closer one might only expand his sources of drugs and circle of similarly addicted friends. I generally refer patients to the hospitals on the Harvard Teaching Service, either Massachusetts General or McLean Hospital.

(Emphasis added).

Because Respondent challenged the need for a conservatorship, Dr. Kenner appeared in person and testified at the November 14, 2007 hearing. Dr. Kenner's in-court testimony was wholly consistent with his Report of Physician and his narrative psychiatric report.

Respondent, however, argues in his brief that Dr. Kenner's testimony was insufficient to establish that he was a disabled person on November 14, 2007. He also asserts that Dr. Kenner's testimony "lacks all indicia of empirical or scientific basis and amounts to conclusory statements supported by bald speculation." Respondent also places emphasis on the fact that Dr. Kenner did not have actual knowledge of Respondent's drug use because it "was not supported by toxicological verification"; that Dr. Kenner merely "thought [Respondent] was abusing a 'stimulant.'"

While Dr. Kenner did not have the benefit of a toxicological test, or an admission by Respondent of his crack cocaine addiction,[7] Dr. Kenner's professional opinion does not lack a proper foundation. As Dr. Kenner explained, he was not speculating when he testified that Respondent was addicted to a "stimulant," and his dependency was "so profound that he should be detoxified in an inpatient hospital setting."

We have dealt with similar challenges to the sufficiency of the evidence in a conservatorship proceeding when the doctor had not performed a thorough office examination or drug tests. *See*, *e.g., In re Conservatorship of Jewell*, No. M2008-02621-COA-R3-CV, 2009 WL 4573420 (Tenn. Ct. App. Dec. 4, 2009). In *Jewell*, the respondent, named Lisa, contended that Tennessee Code Annotated § 34-3-104(7) requires the petitioner to include a "sworn medical examination report," and that the affidavits of two physicians, Drs. Elam and Fishel, relied upon by the petitioner were deficient because they did not perform a "real" examination of her. *Id*. at *12. She noted that the physicians had not examined her in their offices, that they merely "observed her for only ten minutes, in a parking lot rather than a clinical setting, where they did not perform psychological tests, but obtained information from Lisa's father." *Id*. We found her argument unpersuasive explaining:

> Dr. Elam testified that it was routine for a doctor trying to diagnose a patient's mental status to confer with family members about their observations of the patient's behavior. Dr. Fishel also testified that it was normal protocol to meet with a patient's family. Both physicians also contacted Dr. Lavie prior to

[7]Although the following evidence was not available on November 14, 2007, we note that David R. Street, M. D., Board Certified in Forensic Psychiatry, and James R. Walker, Ph.D., Board Certified in Forensic Psychology and Neuropsychology, conducted an extensive psychiatric evaluation of Respondent in their offices on May 15, 2010, which was admitted into evidence without objection at the hearing on May 24, 2010. In their joint report, they state the diagnosis of Respondent was "Cocaine dependence, in early full remission," "Alcohol dependence in early full remission," "Cannabis abuse," and "Depressive disorder, NOS." Further, the report of Dr. Evelyn Frye, Ph.D., a licensed psychologist who had evaluated Respondent, was admitted into evidence at the hearing without objection. In her report, Dr. Frye also diagnosed Respondent with cocaine and alcohol dependence as well as cannabis abuse.

submitting their affidavits. Dr. Elam testified that Lisa's mental condition was readily apparent and that she was obviously delirious when he saw her. He said he had also seen her on numerous other occasions in the past when she was psychotic. Even *Dr. Lavie testified that a trained clinician could see someone for less than ten minutes and determine that he or she had a psychiatric or psychological need for a guardian if the patient was floridly psychotic or out of his or her mind. He further testified that it was not unusual for an internist, such as Dr. Elam, to make that type of decision because internists make decisions regarding competency and observe floridly psychotic patients when making rounds in a hospital.*

*Id.* (emphasis added). After considering all the evidence and relevant circumstances in the *Jewell* case, the court found that "the examinations by Drs. Elam and Fishel were not so deficient as to require dismissal of the petition for conservatorship." *Id.*

Whether the stimulant Respondent was addicted to at the time was crack cocaine, or another highly addictive and life-threatening stimulant, is immaterial. As Dr. Kenner clearly and convincingly established on November 14, 2007, Respondent was in a life-threatening situation from which he could not extract himself, he had "lost any ability to rehabilitate himself by pulling on his own bootstraps," and he "was going to use [the stimulant he was addicted to] until either his body gives out or his money gives out, one or the other."

As noted earlier, the statutory definition of a "disabled person" for purposes of a conservatorship proceeding is someone 18 years of age or older "in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability *or other mental or physical incapacity*." Tenn. Code Ann. § 34-1-101(7). In determining the need for a conservatorship, the pivotal question is not merely the diagnosis or, in this case, the specific drug being abused, but "the effect that the illness, injury, or *condition* has had on the capacity of the person for whom a conservator is sought." *Groves*, 109 S.W.3d at 331 (emphasis added). The *condition* at issue here is Respondent's addiction to a drug that is threatening Respondent's life and, as Dr. Keener explained in his report and at the hearing, the threat was not remote.

On November 14, 2007, the trial court found that the evidence clearly and convincingly established that Respondent was a disabled person and in need of assistance from the court. "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings." *In re Hutcheson*, No. E2008-00737-COA-R3-CV, 2009 WL 981702, at *22 (Tenn. Ct. App. April 13, 2009) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn.1999) (quoting *Collins*

*v. Howmet Corp.*, 970 S.W.2d 941, 943 (Tenn.1998))). This is because, unlike the trial court, we do not have the opportunity to observe the witnesses and make credibility determinations.

The evidence before the trial court on November 14, 2007, clearly and convincingly established that Respondent was a disabled person in need of the court's supervision, protection and assistance until Respondent addressed his debilitating and life-threatening addiction. Accordingly, the trial court did not err by appointing a conservator for Respondent's person and property on November 14, 2007.

## II.
### COSTS OF THE CONSERVATORSHIP PROCEEDINGS

We now turn our attention the Respondent's assertion that the trial court erred in assessing the costs of the conservatorship proceedings against him and not Petitioner. The basis of this argument is that only a "temporary conservator" was appointed and the Petition to appoint a conservator was dismissed prior to the appointment of a "permanent conservator." Based upon this fact, Respondent contends, the trial court erred in not assessing the costs of the proceedings against Petitioner pursuant to Tennessee Code Annotated § 34-1-114(a). We find no merit to this argument.

Respondent contends the trial court erroneously construed Tennessee Code Annotated § 34-1-114(a) when it assessed the costs of the conservatorship proceedings against him. Thus, the issue constitutes a question of statutory interpretation, which is a question of law that we review under the de novo standard with no presumption of correctness. *Sullivan v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004) (citing *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003)); *see also Trout*, 2009 WL 3321337, at *11. To ascertain and give effect to "the intention and purpose of the legislature is a basic rule of statutory construction." *Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475, 490 (Tenn. 2006). The courts ascertain legislative intent "from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Id.* If the language in a statute is unambiguous, we must apply the plain meaning with the presumption that "the legislature says in a statute what it means and means in a statute what it says." *Kyle v. Williams*, 98 S.W.3d 661, 664 (Tenn. 2003).

The statute at issue, Tennessee Code Annotated § 34-1-114(a), reads:

*If a fiduciary is appointed, the costs of the [conservatorship] proceedings*, which are the court costs, the guardian ad litem fee, the required medical examination costs and the attorney's fee for the petitioner, *shall be charged against the property of the respondent* to the extent the respondent's property

exceeds the supplemental security income eligibility limit. *If no fiduciary is appointed, the costs of the proceedings shall be charged against the petitioner.* The guardian ad litem fee and the attorney's fee for the petitioner shall be established by the court. If a fiduciary is cited for failure to file an inventory or accounting, the costs incurred in citing the fiduciary, in the discretion of the court, may be charged to and collected from the cited fiduciary.

(Emphasis added).

The appointment of a fiduciary, in this case "a conservator," becomes effective "[o]n the entry of an order appointing the fiduciary, the administration of the oath . . . and the posting of any required bond."[8] Tenn. Code Ann. § 34-1-109(a). Evidence of the appointment of the fiduciary in a conservatorship proceeding is the issuance of letters of conservatorship. *Id*. Letters of Conservatorship were issued to Petitioner; thus, the appointment of Petitioner as conservator for Respondent became effective at that time.

As we observed in *Jewell*, wherein this court cited to *In re Conservatorship of Groves*, 109 S.W.3d at 331:

[I]n determining the appropriate nature and extent of the duties of the conservator, [the trial court] must decide such issues as whether the person is fully or partially disabled, *whether the incapacity is temporary or permanent, and whether the person requires full or part-time supervision, protection, or assistance.* If the court concludes that supervision is necessary, it must then "enter an order appointing a conservator and must specifically '[e]numerate the powers removed from the respondent and vested in the conservator.'" *Id.* (citing Tenn. Code Ann. § 34-3-107(2)." However, [*Groves*] did not say that the trial court must also specifically state in its order all of its conclusions regarding whether the disability was full or partial, *temporary or permanent,* etc. Tennessee Code Annotated section 34-3-107 lists specific requirements for orders appointing conservators, stating that the order must "Name the conservator or conservators . . . Enumerate the powers removed from the respondent and vested in the conservator. . . . State any other authority or direction as the court determines is appropriate to properly care for the person or property of the disabled person," and include other specific provisions if the conservator will have the right to manage property. However, *it does not*

_____

[8]Subsection (b) of Tennessee Code Annotated § 34-1-109 states: "Before delivering the letters of guardianship or conservatorship, the clerk shall administer to the fiduciary an oath for the faithful performance of the fiduciary's duties."

*require the order to specify whether the person's disability is full or partial, temporary or permanent.*

*Jewell*, 2009 WL 4573420, at *13.

The court in *Jewell* rejected the respondent's argument that the trial court erred by failing to specify "whether a respondent's disability was full or partial." After noting that the respondent had not cited any authority to support her assertion, the Court stated that contrary to the respondent's assertion, "the cases we have encountered only state whether the respondent was disabled and whether he or she was in need of the court's assistance." *Id.* (citing *Hutcheson*, 2009 WL 981702, at *22; *In re Conservatorship of Davenport*, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *8 (Tenn. Ct. App. Dec. 27, 2005); *Crumley v. Purdue*, No. 01-A-01-9704-CH00168, 1997 WL 691532, at *3 (Tenn. Ct. App. Nov. 7, 1997)). The respondent in *Jewell*, whose name is Lisa, also asserted that the trial court erred by failing to expressly state that the appointment of the conservator was *temporary*. The court also rejected this argument, explaining:

> Regarding the "temporary or permanent" issue, Lisa's attorney ad litem requested, at the conclusion of the hearing, that the trial court include a provision in any order it entered stating that the case could be reviewed in nine months or one year in order to reevaluate Lisa's status. The court's order simply appointed Mother and Father co-conservators without including any provision regarding when the order could be reviewed. [footnote omitted] Tennessee Code Annotated section 34-3-108(a) allows a disabled person, or any interested person on the disabled person's behalf, to petition the court at any time for termination or modification of the conservatorship. The disabled person may communicate his or her request to the court by any means, including oral communication or informal letter. Tenn. Code Ann. § 34-3-108(b). The court must conduct a hearing upon receipt of such a petition, and the conservator may be discharged or have its duties modified if the court determines that the respondent is no longer disabled, or that it is in the best interest of the respondent that the conservatorship be terminated. Tenn.Code Ann. § 34-3-108(a), (c). The preponderance of the evidence standard applies to termination of conservatorship proceedings. *In re Maxwell*, No. M2002-01654-COA-R3-CV, 2003 WL 22209378, at *2, n.1 (Tenn. Ct. App. Sept. 25, 2003). Due to the availability of this statutory procedure, Lisa was not prejudiced by the trial court's failure to include the requested "review provision" in its order appointing the co-conservators.

*Id.* at *14.

As was the case in *Jewell*, we find no authority that supports Respondent's assertion that the appointment of a "Temporary Conservator" does not constitute the appointment of a "fiduciary," or that only the appointment of a *permanent* conservator constitutes the appointment of a fiduciary, as contemplated in Tennessee Code Annotated § 34-1-114(a), which states: "If a fiduciary is appointed, the costs of the [conservatorship] proceedings . . . *shall be charged against the property of the respondent*." What is significant is that a fiduciary/conservator was appointed – regardless of the designation of temporary, permanent, partial or full – and the fiduciary/conservator faithfully executed the duties and responsibilities entrusted to him. *See Graves v. Philpot*, 1995 WL 351012, at *1-2 (Tenn. Ct. App. June 9, 1995) (holding that the appointment of a temporary conservator for a 95-year-old lady was deemed proper as well as "continuing, or re-instating" the appointment of the temporary conservator).

## III.
### DISCRETIONARY COSTS

Respondent's final issue is that the court erred in finding that Petitioner was the "prevailing party" and, upon that erroneous finding, erred in granting Petitioner's Tennessee Rule of Civil Procedure 54.04(2) motion for discretionary costs.

A decision whether to grant Tenn. R. Civ. P. 54.04(2) discretionary costs lies, as the name implies, within the discretion of the trial court. *Duran v. Hyundai Motor America, Inc.*, 271 S.W.3d 178, 215. Thus, the appellate court reviews such a decision under an abuse of discretion standard. *Id.*

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (internal citations omitted).

As we have already addressed in this opinion, there was clear and convincing evidence to support the trial court's 2007 appointment of Petitioner as the conservator for Respondent. Fortunately Respondent's health improved dramatically during the pendency of this conservatorship proceeding, and based upon the trial court's finding in June 2010, Respondent was no longer a disabled person and the conservatorship could be terminated.

Respondent's protestations to the contrary notwithstanding, it is undisputed that the trial court found Respondent was a disabled person in need of assistance, protection, and supervision of the court on November 14, 2007, and for the next thirty-one months. The fact that the conservatorship was subsequently terminated does not establish that a conservator was never appointed. It stands for the obvious fact that Respondent was a disabled person in 2007, for which a conservator was appropriately appointed, and fortunately he addressed, hopefully once and for all, his life-threatening crack cocaine addiction, thereby rendering the conservatorship temporary instead of permanent. Therefore, Petitioner was the prevailing party and the trial court did not abuse its discretion by awarding discretionary costs against Respondent as Tennessee Rule of Civil Procedure 54.04(2) expressly permits. Accordingly, we affirm the award of discretionary costs against Respondent.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, John Daniel Tate.

_____
FRANK G. CLEMENT, JR., JUDGE