

FILED
Apr 11, 2023
12:43 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Peter Rhea | ) | Docket No.  2022-08-0514 |
| | ) | |
| v. | ) | State File No.  50622-2018 |
| | ) | |
| Titan Transfer, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Amber E. Luttrell, Judge | ) | |

### Affirmed in Part, Vacated in Part, and Remanded

The employee suffered multiple injuries arising from a work-related accident.  During the course of his medical care, the authorized physician made numerous recommendations that were subjected to utilization review.  Some recommendations were subsequently authorized following utilization review denials, but others were not.  Specifically, the treating physician recommended a "home gym," and the employee received home healthcare that did not necessarily include "nursing services."  Following an expedited hearing, the trial court conditionally ordered the employer to authorize the installation of a "home gym."  It also ordered reimbursement for certain home healthcare services already provided and authorization of additional home healthcare provided by a "nurse, nurse's aide, or 'person whom the medical profession recognizes as a nurse.'"  The employer has appealed.  We affirm in part and vacate in part the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

J. Allen Brown, Nashville, Tennessee, for the employer-appellant, Titan Transfer, Inc.

Spencer Barnes, Jackson, Tennessee, for the employee-appellee, Peter Rhea

### Factual and Procedural Background

Peter Rhea ("Employee"), a fifty-three-year-old Mississippi resident, worked as a shop manager and mechanic for Titan Transfer, Inc. ("Employer"), a trucking company. On June 27, 2018, Employee was gathering tools when a driver backing up a tractor-trailer struck Employee and pinned him between the truck's trailer and a tool crib.  Employee

suffered multiple injuries, including pelvic and femur fractures and nerve injuries resulting in incontinence. Since the date of the accident, Employee has received care from multiple providers and is currently under the care of Dr. Michael Beebe, an orthopedic surgeon.

Employer accepted the accident as compensable and authorized medical care. However, Employer has submitted certain prescribed treatments to utilization review as authorized by Tennessee Code Annotated section 50-6-124. Of those prescribed treatments, some that had been denied as a result of the utilization review process were appealed to the Medical Director of the Tennessee Bureau of Workers' Compensation ("Bureau"). The Medical Director upheld certain denials and overturned others. For example, on April 29, 2022, the Bureau's Medical Director overturned utilization review denials for a fitted knee brace, "bilateral custom AFOs,"[1] wound care, and pain management. On that same date, the Medical Director agreed with denials for a podiatry referral, modification of a wheelchair seat, "[l]ifetime aquatic therapy," "[h]ome gym and equipment," a "[h]andicapped vehicle," "[h]ome ramp modification," and "[d]aily home health care." The Medical Director recommended that Employer authorize a "complete home environmental evaluation" by a "home specialist."

Employee sought an expedited hearing to address the denial of certain recommendations made by the authorized treating physician. In his brief filed in support of his expedited hearing request, Employee argued that any recommendation of an authorized treating physician was entitled to a presumption of medical necessity, and Employer had failed to provide any evidence overcoming this presumption. In response, Employer challenged whether "unlicensed sitters, home gymnasiums, home renovations, vehicle modifications, driving school, furniture, and other similar items" are within the "breadth and scope of medical benefits."

Before the expedited hearing, Employer filed what it called a "Notice of Intent to Authorize Certain Medical Benefits," including aquatic therapy, if such therapy can be arranged pending a medical re-evaluation; a "home safety evaluation"; construction of a wheelchair ramp, conditioned upon written consent of the home's owner; a new chair lift; a modified wheelchair seat; a urology referral; and a neurology referral.[2] Items that remained at issue included the "home gym" and daily home healthcare services. Following the expedited hearing, the trial court ordered employer to "provide home gym equipment" under three conditions: (1) if Employee is deemed unable to operate a modified vehicle; or (2) if Employer declines to authorize a modified vehicle; and (3) "upon review of the specialist's findings from the complete home evaluation." Moreover, the trial court ordered Employer to pay an outstanding bill from a company called "Comfort Keepers" in

---

[1] As explained in Dr. Beebe's deposition, "custom AFOs" are orthotics intended to help Employee stand and balance.

[2] Employee rents the home where he resides, and the permission of the homeowner was deemed necessary before any structural changes could be made.

the amount of $34,461.33, and it ordered Employer to authorize "home health services . . . with a professional nurse, nurse's aide, or 'person whom the medical profession recognizes as a nurse' . . . during [Employee's] wife's work hours." Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

## Analysis

Tennessee's Workers' Compensation Law states that an employer is required to provide the following to an employee who suffers a compensable work-related injury:

> such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other reasonable and necessary apparatus, . . . [and] such nursing services or psychological services as ordered by the attending physician . . . made reasonably necessary by accident as defined in this chapter.

Tenn. Code Ann. § 50-6-204(a)(1)(A). The scope and breadth of medical treatment as described in this provision has been the subject of litigation since similar language was adopted in the original Workers' Compensation Law in 1919.[3] For example, in *Calderon v. Auto Owners Ins. Co.*, No. M2015-01707-SC-R3-WC, 2016 Tenn. LEXIS 813 (Tenn. Workers' Comp. Panel Oct. 24, 2016), the work injury caused the employee's paraplegia. After obtaining a judgment in his favor, the employee later requested that the employer's insurer be required to pay the difference between the rent he was paying at the time of the injury and the rent of a handicap-accessible home. *Id.* at *3. In rejecting Employee's argument that section 204(a)(1)(A) included wheelchair-accessible housing within the

---

[3] The 1919 Act provided for "such medical and surgical treatment, medicine, medical and surgical supplies, crutches and apparatus as may be reasonably required." 1919 Tenn. Pub. Acts, Chap. 123, sec. 25.

meaning of the phrase "other reasonable and necessary apparatus," the Supreme Court's Special Workers' Compensation Appeals Panel concluded, "the insurer is not responsible for paying the difference in rent between a non-handicap accessible home and a handicap accessible home under current law." *Id.* at *10. In essence, the Appeals Panel concluded that such benefits were beyond the scope of "medical benefits" as defined in Tennessee's Workers' Compensation Law. *Id. See also Dennis v. Erin Truckways, Ltd.*, 188 S.W.3d 578, 591 (Tenn. 2006) ("[T]he language of the statute simply cannot sustain the analytical leap necessary to construe housing as 'medical apparatus.' The statute . . . does not contemplate basic necessities of life, such as housing.").

The term "medical treatment" is not defined in Tennessee's workers' compensation statutes and regulations. However, two regulations speak to the scope of medical treatment. For example, the term "medical necessity" is defined to mean:

> healthcare services that a physician, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
> (a)  In accordance with generally accepted standards of medical practice, including Treatment Guidelines as defined in Rule 0800-02-06-.01(19);[4]
> (b)  Clinically appropriate, in terms of type, frequency, extent, site and duration; and considered effective for the patient's illness, injury or disease;
> (c)  Not primarily for the convenience of the patient, physician, or other healthcare provider; and
> (d)  Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

Tenn. Comp. R. & Regs. 0800-02-06-.01(13). In addition, the term "[t]reatment [g]uidelines" is defined to mean "recommendations intended to optimize patient care that are informed by a systematic review of the evidence and an assessment of the benefit and harms of alternative care options." Tenn. Comp. R. & Regs. 0800-02-06-.01(23). Thus, for the recommendations of a treating physician to be deemed within the scope of "reasonable" and "medically necessary" treatment, and therefore compensable under section 50-6-204(a)(1)(A), it must: (1) comply with generally accepted medical standards; (2) be clinically appropriate as to type, frequency, extent, site, and duration; (3) not be primarily for the convenience of the patient or provider; and (4) be the most cost-effective

---

[4] This cross-reference is in error, as the definition of "Treatment Guidelines" is contained in Tenn. Comp. R. and Regs. 0800-02-06-.01(23).

4

alternative among reasonably equivalent alternatives. The statute provides a rebuttable presumption that treatment recommendations made by an authorized physician are reasonable and necessary, and the burden is on the employer to establish otherwise by a preponderance of the evidence. Tenn. Code Ann. § 50-6-204(a)(3)(H).

Here, Employer did not appeal the trial court's conditional order for "home gym equipment"; thus, we need not address this aspect of the trial court's order. Employer did appeal: (1) the court's order for the payment of the past due bill from Comfort Keepers in the amount of $34,461.33; and (2) the order for ongoing home healthcare services as provided by a "professional nurse, nurse's aide, or 'person whom the medical profession recognizes as a nurse.'" We elect to address those issues in reverse order.

*Order for Nursing Services*

As noted above, any treatment recommended by an authorized physician is presumed to be medically necessary, and the burden of proof in such circumstances shifts to the employer to prove by a preponderance of the evidence that such prescribed treatment is *not* medically necessary. Tenn. Code Ann. § 50-6-204(a)(3)(H); *see also Walls v. United Techs. Corp.*, No. 2019-05-0371, 2021 TN Wrk. Comp. App. Bd. LEXIS 27, at *10-11 (Tenn. Workers' Comp. App. Bd. Aug. 6, 2021) ("[I]t is undisputed that the presumption of medical necessity applied to the surgical recommendations of the authorized physicians, and the burden fell to Employer to rebut the presumption by a preponderance of the evidence.").

During his deposition, Dr. Beebe described the various diagnoses and medical conditions caused by the work-related accident. He also explained Employee's significant limitations in ambulation caused by several factors, including "equinus contracture" and "disuse deconditioning of the lower extremities." With respect to the issue of home healthcare, Dr. Beebe testified as follows:

> The current function of his lower extremities [is] not such that I would be willing to say it would be safe to drive just due to the use of his lower extremities. . . . [H]e has a wife who is attempting to work, and he is unable to essentially care for himself at home. So, in order to allow him to live outside of a care facility, having somebody to assist him with his activities of daily living *is required*. . . . I don't think he requires it 24 hours a day, but I do think he requires it when he doesn't have somebody at home with him.

(Emphasis added.)

In *Long v. Mid-Tennessee Ford Truck Sales, Inc.*, 160 S.W.3d 504 (Tenn. 2005), the Tennessee Supreme Court addressed circumstances in which an injured worker needed nursing services in his home. In that case, the post-surgical care was provided by the

5

employee's wife, who was a certified nurse technician. *Id.* at 507. In describing the care needed in that case, the Supreme Court explained,

> [Employee] testified that when he went home, he was in a full leg cast, was non-ambulatory, and was confined to bed. He was instructed to use a "polar pak ice machine" to regulate the temperature of his leg. He testified that the ice in the polar pak had to be constantly monitored to ensure that the correct temperature was maintained. Shortly after the operation, Long's wound developed a staph infection which took several months to heal. The treatment of the infection required that his bandages be changed every four hours.

*Id.* at 507-08. In concluding that the services provided by the employee's wife were compensable as nursing services, the Supreme Court explained:

> [A] physician discharging a patient to home, knowing that the patient will be confined to a bed and unable to ambulate or perform other functions without assistance, and knowing that the patient will require care such as changing wound dressings or requiring other such attention, must certainly contemplate that nursing services will be required.

*Id.* at 510.

In the present case, Dr. Beebe ordered home healthcare and testified why Employee needed assistance with ambulation and other activities of daily living. The trial court ordered that, moving forward, Employer authorize such services to be provided by a nursing professional. Employer offered no evidence that the home healthcare ordered by Dr. Beebe, an authorized treating physician, was not medically necessary. Therefore, given that: (1) "nursing services" are expressly included within the scope of medical benefits contemplated in Tennessee Code annotated section 50-6-204(a)(1)(A); (2) an authorized treating physician has prescribed such services; and (3) Employer has not met its burden of proving by a preponderance of the evidence that such nursing services are not medically necessary, we have no difficulty affirming that aspect of the trial court's order.

Further, Employer asserts on appeal that the trial court failed to specify a duration for home healthcare services. The answer to that question is found in the pertinent statutory provisions and applicable regulations. The treatment must be provided as long as it is "made reasonably necessary" by the work accident, *see* Tennessee Code Annotated section 50-6-204(a)(1)(A), and as long as it satisfies the criteria of Tenn. Comp. R. and Regs. 0800-02-06-.01(13).

*Payment of Past Home Healthcare Services*

More difficult is the issue concerning the past invoices from Comfort Keepers totaling $34,461.33. Employee testified without contradiction that he never ordered or signed a contract for the caregivers provided by Comfort Keepers, and he was never made aware of the licensure status of the caregivers provided by Comfort Keepers.[5] Employee also argued that Employer or its insurer had authorized and paid Comfort Keepers to provide caregivers in Employee's home for several years without any issues being raised.

On the other hand, Employer produced some evidence that at least two of the caregivers assigned by Comfort Keepers to care for Employee were not licensed or certified nursing professionals.[6] Missing from the record, however, is any evidence that Employer or its insurer "de-authorized" Comfort Keepers in writing or otherwise put them on notice that it would no longer authorize the services provided to Employee by Comfort Keepers. Also missing from the record is any evidence that Employer informed Employee that services provided by Comfort Keepers were no longer authorized. The evidence included in the record indicates that Comfort Keepers provided home assistance services for a significant period of time after Employer stopped paying, but it remains unclear why.[7]

Tennessee Code Annotated section 50-6-122(b) addresses such circumstances. Generally, a healthcare provider *cannot* pursue payment from an employee for non-emergency healthcare services <u>unless</u>: (1) the injury is adjudicated to be not compensable; (2) the provider knew it was not authorized by the employer to provide the services at the time the services were rendered; or (3) the employee knew that the provider was not authorized by the employer to provide care. Thus, the issue of notice is important to this analysis. If Employer put Comfort Keepers on notice that its services were no longer authorized, and Comfort Keepers continued to provide services without entering into a contract with Employee, such circumstances could impact Employer's liability for payment of those invoices. Moreover, if the services provided by Comfort Keepers were unauthorized and Employee was aware of this, Employee must establish it was reasonable and necessary for him to obtain those services despite Employer's decision not to authorize

---

[5] Employer argued that the evidence suggested that Employee *must have* entered into a contract with Comfort Keepers given the length of time such services were provided after Employer (or its insurer) stopped paying the invoices. We reach no conclusion regarding this issue given the lack of evidence supporting the existence or non-existence of such a contract.

[6] As explained by the trial court, such providers may include a professional nurse (R.N., L.P.N), a certified nursing aide, or "a person whom the medical profession recognizes as a nurse." *See Sullivan v. Edwards Oil Co.*, 141 S.W.3d 544, 549 (Tenn. 2004). Moreover, as explained by the Supreme Court in *Long*, it may also include a "certified nurse technician." *Long*, 160 S.W.3d at 507.

[7] Although the parties attempted to obtain a transcript of the hearing, the poor sound quality of the recording made it impossible to provide a transcript. The joint statement of the evidence did not summarize any testimony addressing this issue.

the care. *See, e.g.*, *Barrett v. Lithko Contracting, Inc.*, Nos. 2015-06-0186, 2015-06-0188, 2015-06-0189, 2016 TN Wrk. Comp. App. Bd. LEXIS 93, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 8, 2016) ("an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice").

Thus, the communications between Employee and Employer, if any, regarding the continued use of the services of Comfort Keepers, as well as any notification to Comfort Keepers that their services were no longer authorized, could impact the analysis of Employer's liability for these past bills. As a result, we are compelled to vacate the portion of the trial court's order requiring Employer (or its insurer) to pay past invoices from Comfort Keepers until such time as additional evidence is received regarding the issue of notice (or lack thereof) and the reasonableness and necessity of such services provided by Comfort Keepers under the circumstances.

## Conclusion

For the foregoing reasons, we affirm the portion of the trial court's order compelling Employer to authorize and pay for home healthcare services provided by a licensed or certified nursing professional. We vacate the portion of the trial court's order compelling Employer to pay past invoices of Comfort Keepers, and we remand the case for the court to consider any additional evidence the parties may wish to present regarding notice of the de-authorization of Comfort Keepers and the reasonableness and necessity of such services as discussed above. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

Peter Rhea ) Docket No. 2022-08-0514
)
v. ) State File No. 50622-2018
)
Titan Transfer, Inc., et al. )
)
)
Appeal from the Court of Workers' )
Compensation Claims )
Amber E. Luttrell, Judge )

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of April, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| J. Allen Brown | | | | X | allen@jallenbrownpllc.com |
| Spencer Barnes | | | | X | spence@morrisonandbarnes.com mbwcparalegal@morrisonandbarnes.com |
| Amber E Luttrell, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov